UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLEETWOOD SERVICES,

Plaintiff,

v.

RAM CAPITAL FUNDING LLC, TSVI
REICH a/k/a STEVE REICH, RICHMOND
CAPITAL GROUP LLC n/k/a RCG
ADVANCES LLC and ROBERT GIARDINA

Defendants.

**Case No.: 20-CV-5120**

## DEFENDANTS RCG ADVANCES, LLC AND ROBERT L. GIARDINA'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Contents

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND........................................................................1

LEGAL STANDARD ..................................................................................6

ARGUMENT                                                              HIGHTENED
PLEADINGS FOR CIVIL RICO AND CONSPIRACY............................7

Information and Belief is not Sufficient to Plead Civil RICO and Conspiracy ..........................10

FLEETWOODS ACTION MUST BE DISMISSED AS TO GIARDINA.................................11

*Fleetwood Failed to Peirce the Corporate Veil* ......................................11

*Fleetwood Released Giardina via its Settlement Agreement with Ram* ......................................13

Fleetwood's Breach of Contract Claim Fails Against Both Richmond and Giardina .................15

FLEETWOOD'S CAUSE OF ACTION FOR MONEY HAD AND RECEIVED MUST BE DISMISSED ......................................................15

FLEETWOODS ALLEGED CIVIL RICO AND CONSPIRACY CAUSES MUST BE DISMISSED ......................................................17

New York Does not Recognize Civil Conspiracy ....................................21

CONCLUSION..........................................................................................22

# Cases

413 W. 48th St. Housing Development Fund Corp. v. Saparn Realty, Inc., 2017 NY Slip Op. 31773(U). 16

*Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472, 474, 905 NYS2d 585 [2010]). ......................................... 21

*Albstein v. Elany Contr. Corp.,* 30 AD3d 210 210 (1st Dept' 2006). ...................................................... 12

*Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969, 503 NE2d 102, 510 NYS2d 546 [1986];.. 21

*Allstate Ins. Co. v. Valley Physical Med. & Rehabilitation, P.C.*, 2009 WL 3245388, at *3 (E.D.N.Y.
Sept. 30, 2009) ........................................................................................................................... 18

*amilton Capital VII, LLC v. Khorrami, LLP*, 48 Misc. 3d 1223(A), 22 N.Y.S.3d 137, 2015 N.Y. Misc.
LEXIS 2954, *20 fn. 14 (N.Y. Co. Sup. Ct. 2015 ...................................................................... 16

Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) ....................................................... 18

*Bell At. Corp. v. Twombly*, 550 U.S. 544, at 545, 127 S. Ct. 1955, at 1959, 167 L.Ed.2d 929 (2007) ......... 6

*Berman v. Parco*, 986 F. Supp. 195, 208 (S.D.N.Y. 1997)). ..................................................................... 14

*Blanco v Polanco*, 116 AD3d 892, 895-896, 986 NYS2d 151 [2014]; ..................................................... 21

*Brackett v Griswold*, 112 NY 454, 466-467, 20 N.E. 376 [1889]; ............................................................. 21

*Casio Computer Co., Ltd. v. Sayo*, 98CV3772 (WK), 2000 U.S. Dist. LEXIS 15411, 2000 WL 1877516,
at *18 (S.D.N.Y. Oct. 13, 2000) ................................................................................................. 21

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ........................................................... 7

*Compare D. Penguin Bros. Ltd. v. City Nat. Bank*, 13 CIV. 0041 (TPG), 2014 U.S. Dist. LEXIS 32819,
2014 WL 982859, at *3 (S.D.N.Y. Mar. 11, 2014 ...................................................................... 20

*David & Assocs., Inc. v. Health Mgmt. Servs., Inc.*, 168 F. Supp. 2d 109, 113 (S.D.N.Y. 2001) .............. 14

*Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987); *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d
957, 960  [**15]  (2d Cir. 1987) ................................................................................................. 10

*Dickinson v Igoni*, 76 AD3d 943, 945, 908 NYS2d 85 [2010]). ............................................................... 21

*DLJ Mortg. Capital*, 726 F. Supp. 2d at 236 ........................................................................................ 9

*Donatelli v. Siskind*, 170 A.D.2d 433, 434, 565 N.Y.S.2d 224, 226 (2d Dep't 1991) ............................... 17

*Enviromental Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 271-72 (E.D.N.Y. 2014) .................... 21

*Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 13 Civ. 4568 (ADS), 7 F. Supp. 3d 260, 2014 U.S. Dist.
LEXIS 40486, 2014 WL 1259959, at *9 (E.D.N.Y. Mar. 25, 2014 ............................................. 20

*Faber v. Metro. Life Ins., Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ............................................................... 6

*Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)); ................................................................. 8

*Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 410 (E.D.N.Y. 2017) ................................. 8

*Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) ................................. 9

*Frederick v. Wells Fargo Home Mortg.*, No. 13-CV-7364 (DLI) (LB), 2015 U.S. Dist. LEXIS 41328, at *21 (E.D.N.Y. Mar. 30, 2015) .................................................................................. 18

*Global Network Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) .............................. 7

*Gross v. Waywell*, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009) ............................................. 8

*Herman v. Malamed*, 110 A.D.2d 575, 487 N.Y.S.2d 791, 793 (1985) ..................................... 14

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) ........................ 8

*Kaul v. Hanover Direct, Inc.*, 296 F. Supp. 2d 506, 517 (S.D.N.Y. 2004) ................................. 14

*Lee Dodge, Inc. v Sovereign Bank, N.A.*, 148 AD3d 1007, 1009, 51 NYS3d 531 [2017]; ....................... 22

*Lubin v. Dubin*, CV 13-6619, 2014 U.S. Dist. LEXIS 24734, 2014 WL 794313 ................................... 20

*Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986) ........................................................... 10

*Lundy v. Catholic Health Sys. of Long Island, Inc*., 711 F.3d 106, 119 (2d Cir. 2013) ........................... 18

*Manley v. Doby*, 2012 WL 5866210, at *3 (E.D.N.Y. Nov. 19, 2012) ........................................... 18

*Matter of Morris v. New York State Dep't of Taxation and Fin.,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11 (1993 ........................................................................................................... 13

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)), ............................................... 8

*Moccio v. Cablevision Sys. Corp*., 208 F. Supp. 2d 361, 371 (E.D.N.Y. 2002)). .......................... 18

*Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010) 7

*Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 807 F. Supp. 337, 341 (S.D.N.Y. 1992 ............ 15

*Perez v Lopez*, 97 AD3d 558, 560, 948 NYS2d 312 [2012] .................................................... 21

*Reich v. Lopez*, 38 F. Supp. 3d 436, 452 (S.D.N.Y. 2014) .................................................... 20

*Robert B. Thompson, Piercing the Corporate Veil*: An Empirical Study, 76 CORNELL L. REV. 1036, 1039 (1991). ..................................................................................................... 11

*Romano v Romano*, 2 AD3d 430, 432, 767 NYS2d 841 [2003]; *Sokol v Addison*, 293 AD2d 600, 601, 742 NYS2d 311 [2002]). ...................................................................................... 22

*S.E.C. v. Lee,* 720 F. Supp. 2d 305, 338 (S.D.N.Y. 2010). .................................................. 20

*Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974) ................................... 10

*Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972) .......................................................... 10

*Swinson v. City of New York*, No. 12cv6080 (VB), 2015 U.S. Dist. LEXIS 28425, 2015 WL 873390, at *2 (S.D.N.Y. Feb. 11, 2015 ....................................................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 321 (2007 ..................................... 10

*Vild v. Visconsi*, 956 F.2d 560, 568-69 (6th Cir. 1992); .................................................... 19

*Womack v. Capital Stack, LLC*, No. 1:18-cv-04192 (ALC), 2019 U.S. Dist. LEXIS 148644, at *9 (S.D.N.Y. Aug. 30, 2019). ................................................................................. 17

*Wood ex rel. U .S. v. Applied Research Associates, Inc*., 328 F. App'x 744, 747 (2d Cir. 2009). .......... 20

Defendant RCG Advances, LLC ("RCG") and Robert L. Giardina ("Gardina") ("RCG" and "RG" collectively referred to herein as "Defendants") hereby move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support of its Motion to Dismiss, the Defendants state as follows:

## INTRODUCTION

Fleetwood Services, LLC ("Plaintiff or "Fleetwood") initiated this lawsuit alleging six causes of action: (1)Breach of Contract, of which there was an alleged agreement between Defendant Ram and Plaintiff's which was previously settled[1]; (2) money had and received; (3) Texas Usury; (4) Attorney Fee's pursuant to Texas Usury; (5) civil RICO; and (6) conspiracy.

As explained in detail below, each of Fleetwood's causes of action fails and Defendants respectfully request that the Court grant this Motion to Dismiss without leave to amend accordingly. Moreover, Gardina seeks monetary sanctions for costs of bringing this instant motion as it is upon information and belief, he was released pursuant to a settlement agreement.

## FACTUAL BACKGROUND

Defendant Ram Capital Funding ("Ram") entered into a "Merchant Agreement" (hereinafter referred to as "Agreement') with Plaintiff for the "Purchase and Sale of Future Receivables" as the Agreement itself explicitly confirms, Ram was to purchase Fleetwood's future receivables of which payment terms were premised on what Fleetwood was collected

---

[1] It is upon information and belief that Defendant Robert Giardina was Released pursuant to the terms of the Agreement

as of the date of the Agreement[2], despite the fact that Plaintiff's attempt to mischaracterize their advancement as a loan. (**Exhibit A**)

At its core, merchant cash advance agreements such as the one utilized by Ram represent an innovative form of financing whereby a merchant's business can sell an interest in its contingent and yet to be collected future receivables to a third-party funding source at a discounted rate. The amount of the operative discount reflects various inherent uncertainties surrounding that merchant's subsequent ability to remain an ongoing concern and collect upon its future receivables.

In each instance, consistent with the foregoing dynamic, Ram entered into a contract with Plaintiff, Fleetwood along with its respective owner guarantor, Robert Fleetwood whereby cash was advanced to the merchant in exchange for payment of a contractually stipulated dollar amount collected over time from their future receivables.

Page 1 of each "Merchant Agreement" for the "Purchase and Sale of Future Receivables" confirms that the contracting merchants are selling an interest in their future receivables to the Ram in exchange for the funds being provided:

> "Merchant hereby sells, assigns and transfers to [Ram] or "buyer" (making [Ram] the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors. . . ."

(Exhibit A; p. 1.)

On that same page, each merchant expressly confirmed that the business agreed to pay a percentage of its daily revenue to the Ram by way of authorized withdrawals from its specified bank account(s) until they have satisfied the total amount of their future receivables sold:

---

[2] The Agreement contained a reconciliation clause

> "Merchant and Merchant's customers shall remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from reach Transaction, until such time as [Ram] receives payment in full of the Purchased Amount."

(*Id*.)

Immediately above the merchant's own conspicuous signature confirming acceptance of the corresponding terms, each "Merchant Agreement" for the "Purchase and Sale of Future Receivables" prominently notes the total purchase price provided by Ram to the merchant, the specified percentage of the business' future receivables to be provided to the Ram by the merchant, the estimated daily dollar amount this equates to, and the total amount of future receivables purchased by Ram from the business. *See* **Exhibit A.**

Fleetwood was positioned to understand the various nuances affecting the value of their future receivables because they possessed the requisite level of sophistication to own and operate their own businesses. Fleetwood understood, without limitation, the contractually agreed upon discounted rate as well as the fact that they specifically authorized Ram to withdraw directly from their respective bank accounts:

> "I, (We) . . . Hereby Authorize, Ram Capital Funding (Hereinafter known as "RCF") to Electronically (ACH) debit the Bank Account Below, of which I am a signer"

(*Id*. at p. 8; ¶ 5)

In addition to Fleetwood's owner executing a "Merchant Agreement" for the "Purchase and Sale of Future Receivables" Fleetwood's owner signed a Guaranty that was actionable if the business breached any of its representations, warranties, or covenants made to Ram for purposes of inducing their merchant cash advance. Pursuant to that Guaranty, the "good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Merchant Agreement" was assured with the understanding that "Guarantor's

3

obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement."

(*Id*. at p. 6; section titled "Guaranty")

Upon executing this Guaranty, Fleetwood's guarantors, Robert and Pamala Fleetwood formally acknowledged, *inter alia*, the following:

> "(i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity."

(*Id*. at p. 7; "Guarantor Acknowledgement")

Moreover, Fleetwood's "Merchant Agreement" for the "Purchase and Sale of Future Receivables" notably contains a confirmation from each of the contracting parties that any and all of their prior interactions had in fact been integrated into that document:

> "4.8 Entire Agreement and Severability. This Agreement embodies the entire agreement between Merchant and [Ram] and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of any other provision contained herein shall not in any way be affected or impaired."

(*Id*. at p. 5; § 4.8)

Accordingly, the Plaintiff's allegations of purported fraud related to certain extrinsic materials (e.g. advertising) must necessarily fail because it was not ultimately incorporated into the contracting parties' "Entire Agreement".

More specifically, and pertinent to the action herein the Merchant Agreement contained a choice of law provision, stating in pertinent part:

> "This Agreement shall be governed by and construed accordance with the laws of the state of New York, without regard… "

(*Id*. at p. 2; §4.5)

As an initial matter, Fleetwood's guarantor's respective Affidavit of Confession of Judgment notably confirmed - under penalties of perjury - that a transaction had been entered into where Ram had purchased an interest in their business's future receivables:

> "This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement"

(Exhibit B; ¶ 6)

Likewise, Fleetwood as well as its guarantors confirmed the fact that their Affidavit of Confession of Judgment could be filed by the Ram upon any default by the corresponding merchant:

> "4.    Merchant Defendants hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, in the sum of $149,000.00 less any payments timely made pursuant to the secured Merchant Agreement dated 11/28/2016, plus legal fees to Plaintiff calculated at thirty three percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 11/28/2016, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.
>
> 5.    In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, against me personally in the sum of $149,000.00 less any payments timely made pursuant to the Merchant

Agreement dated 11/26/2016, plus legal fees to Plaintiff calculated at thirty three percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 11/26/2016, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6. This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendants' accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated 11/26/2016, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendants and myself, under the secured Merchant Agreement, dated 11/26/2016, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s)."

(*Id*. at ¶¶ 4-6).

Lastly, it must be noted that Defendant, Richmond Capital Group LLC ("RCG")was not a party to the Merchant Agreement; moreover, never had any communications and/or correspondence with Fleetwood; thus, RCG had owed no duty to Fleetwood.

## LEGAL STANDARD

It is well established under the standard set forth in *Bell At. Corp. v. Twombly*, 550 U.S. 544, at 545, 127 S. Ct. 1955, at 1959, 167 L.Ed.2d 929 (2007) that:

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."

Indeed, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins., Co*., 648 F.3d 98, 104 (2d Cir. 2011).

The Second Circuit has stated that after *Twombly*, the inquiry on a motion to dismiss is guided by two principles. "First, although 'a court must accept as true all of the allegations contained in a complaint, 'that 'tenet' 'is inapplicable to legal conclusions,' and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroftv. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 at 1949, 173 L.Ed.2d 868 (2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and ' [d]etermining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950). Thus "in order to survive a motion to dismiss" "a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.' "*Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555).

Further, on a Motion to Dismiss, the Court may consider documents attached to the Complaint – which are conspicuously absent in this case – and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation omitted). Under Fed. R. Evid. 201(b)(2), courts may take judicial notice of facts which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, courts may take notice of documents to establish their existence, not for the truth of the statements contained in those documents. See *Global Network Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

**HIGHTENED PLEADINGS FOR CIVIL RICO AND CONSPIRACY**

In addition, where there are allegations of  civil RICO claim under 18 U.S.C.S. § 1964(c), a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation. The pattern of racketeering activity must consist of two or more predicate acts of racketeering. Racketeering activity is defined as any act which is indictable under specified provisions of United States Code Title 18, including mail fraud, wire fraud, extortion, and bank fraud. 18 U.S.C.S. § 1961(1)(B). A RICO claim thus contains three principal elements: (1) a violation of 18 U.S.C.S. § 1962; (2) injury to plaintiff's business or property; and (3) causation of the injury by the violation. *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 410 (E.D.N.Y. 2017)

Courts have described civil RICO as "'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Id.* (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)); *see also DLJ Mortg. Capital*, 726 F. Supp. 2d at 236. Indeed, although civil RICO may be a "potent weapon," plaintiffs wielding RICO almost always miss the mark. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009) (conducting survey of 145 civil RICO cases filed in the Southern District of New York from 2004 through 2007, and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage). Accordingly, courts have expressed

skepticism toward civil RICO claims. *See, e.g., DLJ Mortg. Capital*, 726 F. Supp. 2d at 236 ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations."). *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017)

Courts in this circuit have continuously found that civil RICO and Conspiracy pleadings must be plead with specificity. Here, Fleetwood's allegations of other fraudulent acts fail entirely to comply with the pleading requirements of Rule 9(b), discussed *supra*. As there noted, the law of this circuit requires that allegations of fraud specify the statements made that were false or misleading, give particulars as to the respect in which it is contended that the statements were fraudulent, and state the time and place the statements were made and the identity of the persons who made them. These pleading requirements apply with full force to the allegations in a RICO complaint intended to demonstrate continuity, *Shamis*, 1997 WL 88894, at *15; and the allegations in the case at bar are wholly insufficient to support an inference that the defendants engaged in ongoing and repeated racketeering activity over a term of years, or that they are likely to do so in the future. *Renner v. Chase Manhattan Bank*, 98 Civ. 926 (CSH), 1999 U.S. Dist. LEXIS 978, at *29 (S.D.N.Y. Feb. 2, 1999). Specifically, Fleetwood failed to reference the thousands of viable cash advances, which helped small businesses around the country strive. Rather than accept liability for Fleetwood's poor financial decisions, Fleetwood attempts to cajole this court into believing that there is some kind of criminal syndicate occurring, by utilizing incriminating words, such as "enterprise" and "conspiracy," both of which have no place in the in the instant matter, as Fleetwood has failed to put forth even a scintilla of evidence that a criminal activity has occurred, even on in one instance.

**Information and Belief is not Sufficient to Plead Civil RICO and Conspiracy**

Under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, a complaint for fraud must specify each alleged misstatement or omission, explain why it is false or misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted" with a fraudulent state of mind. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 321 (2007).

Fleetwood attempts to utilize statements in their complaint, which are premised on "information and belief," which has been held by this circuit and others to be an insufficient pleading, pursuant to the Fed. R. 9(b) standard. As rule 9(b) pleadings cannot be based upon information and belief. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972). There is a recognized exception to this rule, however, that fraud allegations may be so alleged as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based. *See Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S. Ct. 1976, 44 L. Ed. 2d 467 (1975); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972); *Equitable Life Assur. Soc'y v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1029 (S.D.N.Y. 1985); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 416 (1969). *See also Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987); *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 960 [**15] (2d Cir. 1987).

Therefore, a complaint will only survive a motion to dismiss "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id* at 324. This concept is of particular

relevance in the instant matter inasmuch as two of the Plaintiff's six causes of action allege
Civil Rico and Conspiracy, which are solely based on "information and belief" which clearly
does not meet the burden set forth by the Federal Rules of Civil Procedure. As such, they
must meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).
Despite this mandate, the Plaintiff fails to satisfy nearly all of the requisite elements of such
claims.

Indeed, once the corresponding analysis is undertaken by this Court, each of the
Plaintiff's six causes of action will be exposed as failing to state a claim inasmuch as their
allegations not only lack specificity, they are untethered to any fact or exhibit that provides
credible support for their allegations. The instant Complaint must be dismissed accordingly
without leave to amend.

## FLEETWOODS ACTION MUST BE DISMISSED AS TO GIARDINA

### *Fleetwood Failed to Peirce the Corporate Veil*

One hallmark feature of the corporate form of business organization is limited liability
for shareholders, generally restricting shareholder liability for the corporation's contract or tort
obligations... *Robert B. Thompson, Piercing the Corporate Veil*: An Empirical Study, 76
CORNELL L. REV. 1036, 1039 (1991).

Fleetwood has named a manager and agent of a legally recognized New Jersey entity in
the forgoing suit, solely because Giardina was allegedly one of the agents working on behalf of
Ram. Fleetwood has done nothing more than allege that Ram has failed to abide by the terms of
the Contract, of which Ram has effectively entered into a settlement with, and now only pursues
these frivolous causes of actions in an attempt to harass and extort Giardina and other associated

11

entities. More importantly, Fleetwood has recognized that Giardina was and is an agent of a legally recognized entity (Ram), whom Fleetwood has already settled with. Thus, Fleetwood has indisputably released Ram's agents and officers, including Giardina.

At all times relevant Giardina acted in good faith, and pursuant to the laws, and more importantly on behalf of a legal corporation as its shareholder, manager, or agent and at no time on his own accord. Such, for Fleetwood to be entitled to any relief, via Giardina, Plaintiff would have to first pierce the corporate veil; thus, proffering evidence of wrongdoing, which Plaintiff cannot and has not yet done. That said, Fleetwood has failed to take the proper steps in piercing the corporate vail.

As can be expected, in any transaction which includes entities; a human must pull the proverbial strings, on behalf of the entity. [E]mployees of a corporation or a partnership cannot be held personally liable absent piercing the corporate veil, which is not the relief being sought herein. *Albstein v. Elany Contr. Corp.,* 30 AD3d 210 210 (1st Dept't 2006). Defendant, Giardina states firmly that at no time, did he act on his own behalf, but only in good faith, within the confines of the law through entities of which he was affiliated with. And as stated supra, the same was acknowledged in when he was released, via the settlement agreement between Fleetwood and Ram, which diminished the actual damages to a de minimums amount.  Thus, it is upon information and belief that Fleetwood continuous litigation  is in bad faith  as it has no basis in either fact of law, as said action gleans a disingenuous purpose.

Plaintiff fails to recognize the public policy that drives the need for corporations, *inter alia*, the need for limiting liability.  Such, Giardina must be dismissed, as Plaintiff failed to plead the proper cause of action, i.e. piercing the corporate veil.  To pierce the corporate veil, certain

elements must be satisfied, which Fleetwood herein has failed to do. Here, Fleetwood has failed to allege any facts which would entitle Plaintiff to the same.

In New York, a party seeking to pierce the corporate veil must generally show that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Matter of Morris v. New York State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11 (1993) Here, Fleetwood has failed to plead the requisite facts, entitling Fleetwood to any relief against Giardina.  At no time anywhere, did Fleetwood pled any fraud, with the requisite heightened pleading standard, outlined herein and codified in Fed Rules of Civ. Pro. proffering fraudulent conduct on behalf of Giardina. Fleetwood's bare legal conclusions and grouping pleading does not lay the groundwork for fraud, Civil Rico, or Conspiracy or even the lesser standard of any wrongdoing.  Such, Plaintiff's action against Giardina must be dismissed with prejudice.

### *Fleetwood Released Giardina via its Settlement Agreement with Ram*

As stated supra, in September 2020 Fleetwood and Ram entered into a settlement agreement. It is upon information and belief, that for certain consideration (a dollar amount), *inter alia*, Ram it's agents and officers were released from the instant litigation. That said, Fleetwood has made substantial judicial admissions that Giardina was in fact a "managing member if Plaintiff Ram Capital Funding, LLC." (Complaint ¶ 11).

Pursuant to Plaintiff's own judicial admissions, Defendant Robert Giardina ("Giardina") "held himself out to be an owner of Ram" (Plaintiff's Complaint ¶7).  Thereafter,

Giardina swore, under penalty of perjury that he was a managing member of Plaintiff RAM Capital Funding LLC."

It is upon information and belief, that the express terms of the settlement agreement between Fleetwood Services, Ram and Steve Reich released all of Ram's employees, agents, officers and successors.

A general release covers "all claims and demands due at the time of its execution." *Kaul v. Hanover Direct, Inc.*, 296 F. Supp. 2d 506, 517 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). A limited release more narrowly covers claims of the type specifically identified in the release itself. *See Herman v. Malamed*, 110 A.D.2d 575, 487 N.Y.S.2d 791, 793 (1985) ("[I]f from the language of the instrument, it appears that the release is to be limited to certain claims, demands or obligations, then the release will be operative as to those matters only.") The interpretation of the terms of a release is "governed by the principles of contract law." *Swinson v. City of New York*, No. 12cv6080 (VB), 2015 U.S. Dist. LEXIS 28425, 2015 WL 873390, at *2 (S.D.N.Y. Feb. 11, 2015).

Under New York law, "'a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into' is enforceable and binding, barring "a showing of fraud, duress, undue influence, or some other valid legal defense." *David & Assocs., Inc. v. Health Mgmt. Servs., Inc.*, 168 F. Supp. 2d 109, 113 (S.D.N.Y. 2001) (quoting *Berman v. Parco*, 986 F. Supp. 195, 208 (S.D.N.Y. 1997)). Further, where the language of the release is clear, "effect must be given to the intent of the parties as indicated by the language employed." *Swinson*, 2015 U.S. Dist. LEXIS 28425, 2015 WL 873390, at *2 (internal quotation marks and citation omitted). *Quinones v. City of N.Y.*, No. 16cv00985 (GBD) (DCF), 2019 U.S. Dist. LEXIS 121896, at *15-16 (S.D.N.Y. July 18, 2019).

**Fleetwood's Breach of Contract Claim Fails Against Both Richmond and Giardina**

To establish a breach of contract claim in New York, a party must show: (1) that an agreement existed between the plaintiff and defendant; (2) what the respective obligations of the parties were; (3) that the plaintiff performed its obligation under the agreement; (4) that the defendant breached the agreement by failing to perform its obligations, and (5) that the plaintiff suffered damages as a result of the breach. *Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 807 F. Supp. 337, 341 (S.D.N.Y. 1992).

Fleetwood has not proffered any evidence that a contract existed between Fleetwood and RCG. At all times, Fleetwood has maintained that they entered into an agreement with Ram, not Richmond. More importantly, the documentary evidence clearly proffers demonstrative evidence that Richmond is not a party to the contract. Specifically, Fleetwood states "On or about November 28, 2016, Ram and Fleetwood entered into a so-called purchase and sale of receivables agreement (the "Agreement")." The Agreement does not have any reference to RCG; thus, the elementary elements of a contract clearly do not exist.  Under New York law, a breach of contract claim requires (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) resulting damages. Here, it is clear that RCG has no duty pursuant to the contract; therefore, RCG cannot be responsible to Fleetwood damages flowing from a contract claim, as there is no privity between RCG and Fleetwood.

**FLEETWOOD'S CAUSE OF ACTION FOR MONEY HAD AND RECEIVED MUST BE DISMISSED**

A claim for money had and received requires a showing that: (1) defendant received money belonging to plaintiff; (2) defendant benefited from the receipt of the money; and (3) under principles of good conscience defendant should not be allowed to retain that money. An action for money had and received is an obligation which the law creates in the absence of

agreement when one party possesses money that in equity and good conscience he/she ought not to retain and that belongs to another. *413 W. 48th St. Housing Development Fund Corp. v. Saparn Realty, Inc.*, 2017 NY Slip Op. 31773(U).

In order to prevail on in an action for Money Had and Received, a plaintiff must alleged sufficient facts to assert that a defendant did in fact received a benefit from the proceeds. Fleetwood's complaint fails to identify that any other party besides Ram received payment from Fleetwood's authorized ACH. Specifically, RCG was not the payee of Fleetwood nor did RCG have any obligation pursuant to the terms of the contract.

As for Fleetwood's claim for Money Had and Received against Giardina, movants respectfully ask this Court to take into account the fact that it is upon information and belief that Giardina was released from this action pursuant to the express terms of the prior settlement. In addition to Giardina's release, Giardina again was not the payee of the Fleetwood funds as all payments were made directly to Ram, via an authorized ACH.

**Texas Laws Have No Place in the instant Action – As the Agreement Contained a Choice of Law – New York**

As stated throughout, Fleetwood entered into a valid contract with Ram, the Agreement. Paragraph 4.5 entitled "Binding Effect, Governing Law, Venue and Jurisdiction succinctly lays out New York Law applies. Fleetwood attempts to utilize Texas's more favorable consumer laws in an attempt to further confuse the issues presented herein. The second circuit has already determined that where a contract specifically enumerates that where an "effective interest rate is based upon a contingency in the debtor's control, **usury** laws do not apply. *Hamilton Capital VII, LLC v. Khorrami, LLP*, 48 Misc. 3d 1223(A), 22 N.Y.S.3d 137, 2015 N.Y. Misc. LEXIS 2954, *20 fn. 14 (N.Y. Co. Sup. Ct. 2015); *see also Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, No. 216CV1545DRHGRB, 2019 U.S. Dist. LEXIS 57527, 2019 WL 1473090, at *5

(E.D.N.Y. Apr. 3,2019) (quoting *TVT Captial*, 252 F. Supp. 3d at 281 ("When a payment or enforcement rests on a contingency, the agreement is valid though it provides for a return in excess of the legal rate of interest")). Moreover, "the lender must have purposefully loaned money at a usurious interest reserved in some form by the contract, and the borrower must have agreed to these usurious terms. *Id.; see also Donatelli v. Siskind*, 170 A.D.2d 433, 434, 565 N.Y.S.2d 224, 226 (2d Dep't 1991)."

Here, it is clear that upon entering into the Agreement, it was not the intention of either party that said term was usury, but that the rate was dependent on an independent factor, future sales. Additionally, the repayment terms were premised on future receivables, and contained a reconciliation clause, which if exercised would have changed the payment terms. The aforesaid variables are the driving factor; thus, Fleetwood's advancement cannot be determined a "loan" and usury laws do not apply. *Womack v. Capital Stack, LLC*, No. 1:18-cv-04192 (ALC), 2019 U.S. Dist. LEXIS 148644, at *9 (S.D.N.Y. Aug. 30, 2019).

Thus, pursuant to the express terms of the contract, causes of actions based in Texas law cannot be sustained in the instant action; thus, must be dismissed. Additionally, as courts in the second circuit have already found, advances such as the one made to Fleetwood is legal and enforceable.

**FLEETWOODS ALLEGED CIVIL RICO AND CONSPIRACY CAUSES MUST BE DISMISSED**

> *Plaintiff has failed to properly plead RICO as Fleetwood fails to demonstrate multiple required elements to prevail*

Fleetwood's fifth and sixth claims allege violations of RICO and Conspiracy must be dismissed. Defendants argue that Fleetwood has failed to plead adequately the requisite elements of a RICO claim. RICO was enacted to "'prevent organized crime from infiltrating America's legitimate business organizations.' " *Manley v. Doby*, 2012 WL 5866210, at *3 (E.D.N.Y. Nov.

17

19, 2012) (quoting *Moccio v. Cablevision Sys. Corp*., 208 F. Supp. 2d 361, 371 (E.D.N.Y. 2002)). RICO contains a criminal provision, see 18 U.S.C. § 1962, and a civil provision, see 18 U.S.C. § 1964. The civil provision permits the recovery of treble damages and reasonable attorney's fees for any person who is "injured in his business or property by reason of a violation of" the criminal provision. 18 U.S.C. § 1964(c). "'Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Allstate Ins. Co. v. Valley Physical Med. & Rehabilitation, P.C*., 2009 WL 3245388, at *3 (E.D.N.Y. Sept. 30, 2009) (citation omitted).

"To establish a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health Sys. of Long Island, Inc*., 711 F.3d 106, 119 (2d Cir. 2013) (quoting Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999). "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Lundy*, 711 F.3d at 119 (citing 18 U.S.C. § 1961(5)). "Racketeering activity" is defined to include a variety of federal and state crimes, including murder, kidnapping, gambling, arson, robbery, bribery, extortion, wire fraud, and mail fraud. See 18 U.S.C. § 1961(1).

In *Fredrick v. Wells Fargo* the court found that mere allegations of an association and a lack of racketeering activity would bar a Plaintiff from prevailing on a claim of RICO. *Frederick v. Wells Fargo Home Mortg*., No. 13-CV-7364 (DLI) (LB), 2015 U.S. Dist. LEXIS 41328, at *21 (E.D.N.Y. Mar. 30, 2015). Here, Fleetwood attempts to cajole this court into finding that Defendant's legitimate business was in fact engaged in a continuous unlawful

enterprise, despite the hundreds of applications, resulting in both denials and approvals; thousands of happy clients and striving businesses.

Most importantly, Fleetwood has failed to make any allegations as to how Defendants wrongfully and/criminally engaged in either wire or mail fraud. Fleetwood's complaint merely states the exact reasons as to why one would utilize our mail and wire systems: "all communications between the members of the Enterprise and Plaintiffs were by interstate email and mail, wire transfers or ACH debits…" Plaintiff's Complaint ¶136.

Alternatively, even if wire fraud were properly pleaded, there is a final pleading requirement that the alleged predicate acts together form "a pattern of racketeering activity." 18 U.S.C. § 1962(c). A "pattern" requires at least two acts of "racketeering activity" occurring within ten years of each other. *See* 18 U.S.C. § 1961(5).  Here, Fleetwood has no standing to argue RICO as Fleetwood can only attest to the fact that allege, as there has been no other judicial findings, that Defendant has had a pattern of criminal behavior.

As a general rule, "the question of whether acts form a pattern rarely is a problem with a criminal enterprise, as distinct from a lawful enterprise that commits occasional criminal acts." *Minicone*, 960 F.2d at 1108 (internal quotation marks omitted). Due to this distinction, it is not enough for [**23]  Plaintiffs to plead that the alleged predicate acts were in furtherance of one of the potential enterprises, as each "possess[es] multiple legitimate purposes[,] and the predicate acts are not [all] related to the enterprise[s] in the same way." *Vild v. Visconsi*, 956 F.2d 560, 568-69 (6th Cir. 1992); *see also Li Jun An*, 2013 U.S. Dist. LEXIS 174158, 2013 WL 6503513, at *8 ("[W]hen the enterprise primarily conducts a legitimate business, no such presumption arises."); *Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 13 Civ. 4568 (ADS), 7 F.

Supp. 3d 260, 2014 U.S. Dist. LEXIS 40486, 2014 WL 1259959, at *9 (E.D.N.Y. Mar. 25,

2014). As this is a **civil** case, Plaintiffs must plead more. *Reich v. Lopez*, 38 F. Supp. 3d 436, 452

(S.D.N.Y. 2014)

In short, Fleetwood has failed to identify a pattern of racketeering that would amount

to anything more than negligent acts. Moreover, Fleetwood has not alleged any facts, as to any

Defendant, establishing intent to defraud. Consequently, Fleetwood has failed to plead any

predicate act of mail and wire fraud. *See Mills*, 12 F.3d at 1176.

### *Fleetwood failed to plead RICO and Conspiracy with a heightened pleading requirement*

As stated supra, "[w]here a civil RICO claim is predicated on acts of fraud, a plaintiff

must comply with Federal Rule of Civil Procedure 9(b)'s requirement to plead with

particularity." *Lubin v. Dubin,* CV 13-6619, 2014 U.S. Dist. LEXIS 24734, 2014 WL 794313, at

*7 (E.D.N.Y. Feb. 24, 2014). The Second Circuit has interpreted Rule 9(b) to require that a

complaint: "(1) specify the statements, oral or written, that the plaintiff contends were fraudulent,

either as misrepresentations or containing fraudulent omissions;  (2) identify the speaker or the

writer; (3) state where, when and to whom the statements were made; and (4) explain why the

statements were fraudulent*." S.E.C. v. Lee,* 720 F. Supp. 2d 305, 338 (S.D.N.Y. 2010). Although

"Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for

license to base claims of fraud on speculation and conclusory allegations." *Wood ex rel. U .S. v.*

*Applied Research Associates, Inc*., 328 F. App'x 744, 747 (2d Cir. 2009). When claims are

alleged against multiple defendants, "guilt by association is impermissible." *Lee*, 720 F. Supp. 2d

at 321.

"[A]ll elements of a RICO claim must  satisfy the heightened pleading requirement set

forth in Rule 9(b) . . . .'"), *with Casio Computer Co., Ltd. v. Sayo*, 98CV3772 (WK), 2000 U.S.

Dist. LEXIS 15411, 2000 WL 1877516, at *18 (S.D.N.Y. Oct. 13, 2000) ("Where a violation of Section 2314 is pleaded   as a predicate act in a RICO claim, those elements which involve fraud must be pleaded with particularity.") *Enviromental Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 271-72 (E.D.N.Y. 2014)

Here, Fleetwood's complaint fails to separate the acts of any one of the alleged wrongdoers, but attempts to make all Defendants responsible for all acts, failing to properly identify each party individually.

### New York Does not Recognize Civil Conspiracy

New York does not recognize civil conspiracy to commit a tort as an independent cause of action (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969, 503 NE2d 102, 510 NYS2d 546 [1986]; *Brackett v Griswold*, 112 NY 454, 466-467, 20 N.E. 376 [1889]; *Blanco v Polanco*, 116 AD3d 892, 895-896, 986 NYS2d 151 [2014]; *Dickinson v Igoni*, 76 AD3d 943, 945, 908 NYS2d 85 [2010]). However, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d at 969; *Blanco v Polanco*, 116 AD3d at 896). Under New York law, "[i]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with  an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement" (*Perez v Lopez*, 97 AD3d 558, 560, 948 NYS2d 312 [2012]; *see 1766-68 Assoc., LP v City of New York*, 91 AD3d 519, 520, 937 NYS2d 33 [2012]; *Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472, 474, 905 NYS2d 585 [2010]). Here, since the underlying tort of RICO must be dismissed as Fleetwood failed to meet the heightened pleading standard, the cause of action alleging civil conspiracy RICO  must also be dismissed,

since it stands or falls with the underlying tort (*see Lee Dodge, Inc. v Sovereign Bank, N.A.*, 148 AD3d 1007, 1009, 51 NYS3d 531 [2017]; *Romano v Romano*, 2 AD3d 430, 432, 767 NYS2d 841 [2003]; *Sokol v Addison*, 293 AD2d 600, 601, 742 NYS2d 311 [2002]).

## CONCLUSION

As demonstrated above, the Complaint's allegations are nothing more than inadequate "legal conclusion[s] couched as…factual allegation[s]." *Twombly*, 550 U.S. at 555.  Defendants therefore respectfully request that the Court grant its Motion to Dismiss the Complaint without leave to amend accordingly.

Dated: November 05, 2020
        Brooklyn, New York

**J. Iandolo Law, PC**

\s\ *Jeremy M. Iandolo*
By: Jeremy M. Iandolo, Esq.
7621 13th Avenue
Brooklyn, New York 11228
Telephone (718) 305.1702
Email: jiandolo@jiandololaw.com
*Attorney for Defendants Richmond Capital*
*Group LLC, and Robert Giardina*