USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/18/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
FLEETWOOD SERVICES, LLC,  :
:
                    Plaintiff, :
:      20-cv-5120 (LJL)
       -v-  :
:      OPINION & ORDER
RAM CAPITAL FUNDING LLC, TSVI REICH a/k/a :
STEVE REICH, RICHMOND CAPITAL GROUP LLC :
n/k/a RCG ADVANCES LLC, and ROBERT :
GIARDINA, :
:
                    Defendants. :
:
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Several motions are pending before the Court. Robert Giardina ("Giardina") moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the amended complaint (the "Amended Complaint") brought by Plaintiff Fleetwood Services, LLC ("Fleetwood"). Dkt. No. 32. Fleetwood moves to dismiss, also pursuant to Federal Rule of Civil Procedure 12(b)(6), a counterclaim brought by Defendant Richmond Capital Group LLC ("Richmond"). Dkt. No. 39. Defendants Ram Capital Funding LLC ("Ram") and Tsvi Reich ("Reich") move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), Richmond's crossclaims. Dkt. No. 35. The Court addresses each motion in turn.

## BACKGROUND

Fleetwood is a small, Texas-based limited liability company engaged in the business of golf course construction. Dkt. No. 28 ¶ 35. Fleetwood filed the instant action against Defendants to collect on a loan that charged interest in excess of 400% per year in violation of Texas and New York usury laws. *Id.* ¶ 1. Fleetwood brings claims of breach of contract, money had and received, violations of Texas and New York usury statutes, and RICO violations. *Id.* ¶¶

114-79.  Reich is the owner and managing member of Ram.  *Id.* ¶ 31.  Giardina is the owner and managing member of Richmond.  *Id.* ¶¶ 4-6.

In November 2016, Fleetwood was experiencing cash-flow issues, and was contacted by a broker offering financing through Ram.  *Id.* ¶ 38.  Around November 28, 2016, Ram and Fleetwood entered into an agreement (the "Merchant Agreement") styled as an agreement for the purchase and sale of receivables, pursuant to which Ram agreed to advance Fleetwood $100,000 in exchange for the purported purchase of all Fleetwood's future receipts until Fleetwood had paid Ram $149,900 in daily installments of $1,399.  *Id.* ¶¶ 39-42.  The Amended Complaint alleges Richmond—and not Ram—provided to Fleetwood $50,000, rather than the $100,000 that was agreed upon, and began withdrawing the $1,399 per day.  *Id.* ¶ 44.  Fleetwood contacted the broker to request the missing $50,000, but was instead offered a second $50,000 receivables purchase agreement.  *Id.* ¶ 45.  Fleetwood demanded to speak with Reich, but the broker advised that Reich would not release the funds until the new year in 2017.  *Id.* ¶ 46.

Fleetwood alleges that the Merchant Agreement was not a purchase and sale agreement, but rather a loan, in spite of its title.  *Id.* ¶ 56.  It points to several features of the Merchant Agreement.  First, Ram was paid back through funds that were not purchased receivables.  *Id.* ¶ 58.  Second, the benefits and risks of ownership of the future receivables remained with Fleetwood.  *Id.* ¶ 64.  Third, Fleetwood remained absolutely liable for repayment of the $149,900.  *Id.* ¶ 70.  Fourth, Fleetwood granted Ram a security interest in substantially all of its assets.  *Id.* ¶ 75.  Fifth, the daily payments were fixed.  *Id.* ¶ 80.

Fleetwood alleges that Ram, Richmond, Reich, and Giardina operate an association-in-fact enterprise for the purposes of RICO liability.  *Id.* ¶ 157.  The alleged enterprise has the goal of soliciting, funding, servicing, and collecting upon usurious loans that

charge interest rates unenforceable under Texas and New York law. *Id.* ¶ 158.

Richmond counterclaimed, arguing that Fleetwood was required under the Merchant Agreement to indemnify it for any disputes arising out of the agreement. Dkt. No. 31 ¶ 180. Richmond additionally crossclaimed against Ram and Reich, alleging breach of contract and indemnification. *Id.* ¶¶ 191-207.

## DISCUSSION

### A. Giardina Motion to Dismiss

Giardina moves to dismiss Plaintiff's claims for breach of contract, money had and received, violation of state usury laws, RICO, and civil and RICO conspiracy.[1] Dkt. No. 32. The motion is denied.

First, it is axiomatic that for a defendant to move to dismiss a cause of action for failure to state a claim for relief, the complaint must actually assert that cause of action against the defendant. A defendant "lacks standing to attack the legal sufficiency" of counts which do not seek relief against him. *Dover Ltd. v. A.B. Watley, Inc.*, 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006). The Amended Complaint contains the following counts: breach of contract/duty of good faith (against Richmond) ("Count One"), money had and received (against Richmond) ("Count Two"), violation of the Texas usury statute (against Richmond) ("Count Three"), attorney's fees/Texas Usury Statute (against Richmond) ("Count Four"), and RICO (against Giardina) ("Count Five"). The Amended Complaint does not allege claims for civil conspiracy or RICO conspiracy and does not allege claims for breach of contract, money had and received

---

[1] Although Giardina styles his motion as being on behalf of "Defendants" and purports to argue that the Amended Complaint does not state a claim against Richmond, Richmond has answered the Amended Complaint and thus is not a proper movant under Fed. R. Civ. P. 12(b)(6). *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").

or violation of state usury laws against Giardina.  It asserts the latter set of claims only against Richmond.  Accordingly, Giardina's motion to dismiss is denied to the extent it is addressed to claims for breach of contract, money had and received, violation of state usury laws, and civil and RICO conspiracy.

Second, Giardina argues that the RICO claim against him should be dismissed for failure to plead fraud with particularity and failure to allege a RICO pattern.  The Amended Complaint asserts a claim against Giardina for conducting and participating in the affairs of an enterprise through the collection of unlawful debt.  Dkt. No. 28 ¶¶ 170-74.  Section 1962(c) of RICO makes it unlawful in the disjunctive for a person "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity *or* collection of unlawful debt."  18 U.S.C. § 1962(c).  RICO defines "unlawful debt" to mean "a debt (A) incurred or contracted in gambling activity which was in violation of the law . . . or which is unenforceable under State or Federal law . . . because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law . . ., or the business of lending money or a thing of value at a rate usurious under State or Federal law."  18 U.S.C. § 1961(6).

As a result, where the predicate acts upon which a RICO claim is based do not sound in fraud, a court does not apply the heightened pleading standards of Rule 9(b).  *See D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) ("The heightened pleading requirements of Rule 9(b) 'apply only to claims of fraud or mistake.'") (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)); *City of Almaty, Kaz. v. Ablyazov*, 226 F. Supp. 3d 272, 277-78 (S.D.N.Y. 2016) ("While 'a plaintiff must plead predicate acts sounding in fraud or

4

mistake according to the particularity requirement of [Federal Rule of Civil Procedure] 9(b),' the 'other elements' of a RICO claim, 'such as non-fraud predicate acts or . . . the existence of an enterprise,' need 'satisfy only the short and plain statement standard of Rule 8(a).'") (quoting *D. Penguin Bros.*, 587 F. App'x at 666). Moreover, "[u]nlike a 'pattern of racketeering activity' which requires proof of two or more predicate acts, to satisfy RICO's 'collection of unlawful debt' definition the [plaintiff] need only demonstrate a single collection." *United States v. Giovanelli*, 945 F.2d 479, 490 (2d Cir. 1991); *see also United States v. Grote*, 961 F.3d 105, 119 (2d Cir. 2020) ("RICO offenses may be predicated on a single instance of collection of unlawful debt, as well as on a pattern of racketeering activity.").

Thus, Giardina's arguments against the RICO claim are meritless. The Amended Complaint alleges the unlawful collection of debt in great detail. Even if it had not, the standards of Rule 9(b) are not applicable. The Amended Complaint alleges more than one act of unlawful collection of debt. It alleges that "Richmond, Giardina and others have preyed upon thousands of small businesses throughout the United States by offering funding under so-called 'merchant cash advances' that 'are in fact fraudulent, usurious loans with interest rates in the triple and even quadruple digits, far above the maximum rate permissible for a loan under New York law.'" Dkt No. 28 ¶ 18 (quoting *James v. Richmond Cap. Grp. LLC, et al.*, Supreme Court of the State of New York, County of New York, Index No. 451328/2020). It names a number of other merchants whom Defendants subjected to the same or similar debt collection practices as Fleetwood alleges here, including a small chocolatier in Las Vegas, Nevada who was told "[w]e will take everything from you" and "[d]o not mess with us" if it did not pay Defendants' usurious rates, *id.* ¶ 95, and a Brooklyn synagogue who was unable to satisfy Defendants' usurious rates after its donations slowed. *Id.* ¶¶ 97-98. When the synagogue failed to pay, a

5

Richmond representative told the rabbi that he would "beat the shit out of" him and told the synagogue's attorney that he knew "where she live[d] and would come shoot out her windows so that she sees who she is dealing with." *Id.* ¶¶ 98-99. Even if the Amended Complaint had not identified these other activities, the requirement that a plaintiff identify two or more acts in order to establish a pattern of racketeering is not applicable when the defendant is liable through unlawful debt collection practices, either by the terms of a statute or under the governing case law.

Third, Giardina's argument that Plaintiff released him from claims in this lawsuit is frivolous. By Release and Confidential Settlement Agreement ("Ram Settlement Agreement"), Plaintiff, Ram, and Reich reached an agreement to settle this case. *See* Dkt. No. 38-14. Ram and Reich were defined in the Ram Settlement Agreement as the Ram Defendants. Plaintiff and the Ram Defendants all agreed to general releases of the others from all claims that such party "ever had, now has or hereafter can, shall, or may have for, upon or by reason of any matter, cause or thing whatsoever, whether known or unknown, from the beginning of the world to the date of th[e] Settlement Agreement." *Id.* § 5(a). Plaintiff's release of the Ram Defendants extended to the "directors, officers, owners, agents, attorneys, . . . employees, and assigns" of the Ram Defendants. *Id.* Importantly, however, Plaintiff did not release either Richmond or Giardina as part of the Ram Settlement Agreement. Section 5(c) of the Ram Settlement Agreement provides:

> Notwithstanding anything to the contrary in this Paragraph 5 or anywhere else in the Settlement Agreement, nothing herein shall be deemed or otherwise construed to release the Richmond Defendants from any all [sic] cause of actions, claims, debts, sums of money, accounts, bonds, bills, covenants, contracts, controversies, promises, agreements, trespasses, variances, judgments, damages, executions, claims, demands whatsoever, in law, equity and admiralty, including, without limitation, any claims asserted in the Action . . . . The Parties expressly represent and warrant that the Richmond Defendants are not intended beneficiaries of this Settlement Agreement and it is the intent of the Parties to preserve all the Richmond Claims.

*Id.* § 5(c).

That understanding is further confirmed by the "Whereas" clauses of the Ram Settlement Agreement which provide: "[T]he Parties do not desire or intend to resolve any disputes involving Richmond Capital Group LLC n/k/a RCG Advances LLC and Robert Giardina their divisions, subsidiaries, predecessors, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns (collectively, the 'Richmond Defendants')." *Id.* at 2. As the parties to the Ram Settlement Agreement expressly stipulated that the Ram Settlement Agreement did not release the claims against Giardina, Giardina cannot rely on the release to dismiss his claims. *See, e.g.*, *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 1992 WL 121726, at *12 (N.D.N.Y. May 23, 1992) ("The scope and meaning of a release will be determined by the manifested intent of the parties—in Corbin's words, 'by the process of interpretation, just as in the case of determining the meaning of an executory contract.'") (quoting *In re Thomas McKinnon Secur. Inc.*, 132 B.R. 9, 13 (Bankr. S.D.N.Y. 1991)).

**B. Motion to Dismiss Counterclaim**

Plaintiff moves to dismiss Richmond's counterclaim alleging that Fleetwood is liable for indemnification under paragraph 1.6 of the Merchant Agreement pursuant to which Fleetwood and the guarantors agree to hold harmless the processor. Dkt. No. 38-3 § 1.6. The motion is granted.

In New York, "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to assume." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989). Indeed, "[t]he promise [to indemnify] should not be found unless it can clearly be

implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.* Accordingly, where "the language of the parties is not clear enough to enforce an obligation to indemnify," New York courts will not "rewrite the contract and supply a specific obligation the parties did not spell out." *Tonking v. Port Auth. of N.Y. & N.J.*, 821 N.E.2d 133, 135 (N.Y. 1989). Moreover, an indemnity provision should not be construed "to extend to losses, damages, or liabilities which are neither expressly within its terms nor of such a character that it can reasonably be inferred that they were intended to be within the contract." *Sutro Bros. & Co. v. Indem. Ins. Co.*, 264 F. Supp. 273, 290 (S.D.N.Y. 1967). Where an indemnity provision limits the obligation to certain claims, the allegations must fall within the indemnified claims for the obligation to be triggered. *See McCoy v. Goldberg*, 1992 WL 237327 at *3-4 (S.D.N.Y. Sept. 15, 1992).

Richmond's counterclaim turns upon Section 1.6 of the Merchant Agreement. That section provides:

> Indemnification. Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by [Ram] for monies owed to [Ram] from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by [Ram]."

Dkt. No. 38-3 § 1.6.

Richmond's claim fails for two reasons. First, Richmond is not the "Processor" protected by Section 1.6. The merchant under the Merchant Agreement is Fleetwood and the "Guarantors" are its owners, Robert Fleetwood and Pamela Fleetwood. Although "Processor" is not specifically defined in the Merchant Agreement, it is plain from the language of the Merchant Agreement as a whole and its context that it refers to the agent who would be processing checks

8

deposited into Fleetwood's account on behalf of Fleetwood. In particular, the Merchant Agreement requires Fleetwood "to execute an agreement with a Bank acceptable to [Ram] to obtain electronic funds transfer services for [Fleetwood's] account at the Bank approved by [Ram]." Dkt. No. 35-4 § 1.1. The account was how Ram was to be paid. The Merchant Agreement provides that Fleetwood would authorize "[Ram] and/or its agent(s) to deduct from the Account the amounts owed to [Ram] and [would authorize Ram] to withdraw from the Account the specified percentages and/or sums by [Ram] debiting the account." *Id.* To that end, the Merchant Agreement contains a number of provisions identifying the "Processor" and protecting Ram's ability to access the account. Section 1.11 prohibits Fleetwood from: (i) "discourage[ing] the use of electronic check processing that are settled through the Processor," *id.* § 1.11(a); (ii) changing its arrangements with the "Processor," *id.* §1.11(b); (iii) changing "the electronic check processor through which the Receipts are settled from Processor to another check processor, *id.*, § 1.11(c); or (iv) taking any actions that diverts a customer's payments that are settled through the "Processor," *id.* §§ 11.11(c) and (d). Under Section 2.5, Fleetwood agreed "not to change its processor . . . without [Richmond's] consent." *Id.* § 2.5.

Reading the indemnification provision in context, it is apparent that it is intended to protect Ram's ability to access the account by ensuring that Fleetwood would give the persons who handle the processing of the electronic checks comfort that they will not face liability either by satisfying claims asserted by Ram for "monies owed to" Ram or by satisfying claims asserted by others (including Fleetwood) that the "Processor" improperly took action based on Ram's instructions. It was not intended to provide indemnification to persons such as Richmond who allegedly was the one who debited the account and deducted the monies from the account.

Second, the claims here do not rise either from "claims asserted by [Ram] from monies

9

owed to [Ram] from [Fleetwood]" or from "actions taken by Processor in reliance upon any fraudulent, misleading or receptive information or instructions provided by [Ram]." Ram has not asserted any claims in this action. It was sued and now has settled. The Amended Complaint does not allege any actions taken by the "Processor" based on instructions provided by Ram. Rather, the gravamen of the Amended Complaint is that Richmond is liable for its own actions as the true party-in-interest under the Merchant Agreement and for soliciting, enforcing and collecting upon a usurious loan. The argument for indemnification would not have had force had Ram been the true party-in-interest and been the one who solicited and enforcement and collected upon the Merchant Agreement. It has no greater force because the true party to the solicitation, enforcement and collection is alleged not to have been Ram but to have been Richmond.

C.   Motion to Dismiss Crossclaims

Ram and Reich move to dismiss Richmond's two crossclaims of breach of contract/duty of good faith and indemnification.. Dkt. No. 31 at 21. The motion is granted.

The first crossclaim asserts that Ram and Reich had a duty to act in good faith and fair dealing with Fleetwood and failed to satisfy that duty. It also alleges that Ram breached its duty to Fleetwood under the Merchant Agreement by withdrawing funds it was not entitled to withdraw from Fleetwood's account. This first crossclaim fails because Richmond does not allege it was a party to any contract with Ram or Reich or that Ram or Reich's alleged conduct violated any duty that they owed Richmond, either in a capacity as contractual counterparty or third-party beneficiary. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 485 N.E.2d 208, 212 (N.Y. 1985) (holding that a party other than the contracting parties may enforce a contract only where "the language of the contract . . . clearly evidences an intent to permit enforcement by the third party"). Indeed, Richmond alleges: "Ram and Reich never assigned the

10

Fleetwood agreement to [Richmond]." Dkt. No. 28 ¶ 205. Accordingly, the first crossclaim is dismissed for failure to state a claim for relief.

The second crossclaim requests indemnification based upon the same provision of the Merchant Agreement that forms the basis of Richmond's counterclaim for indemnification against Fleetwood. Richmond alleges that it continued to debit Fleetwood's account at the direction of Ram and Reich, *id.* ¶ 203, that "Ram, Reich and Fleetwood failed to notify [Richmond] about any excess debits," *id.* ¶ 204, and that "Ram and Reich both agreed to hold [Richmond] harmless," *id.* It thus seeks an order that Ram and Reich indemnify Richmond and pay reasonable attorneys' fees. That claim fails for the reasons stated above with respect to the identical claim for indemnification made against Fleetwood, and for one additional reason. Section 1.6 imposes the obligation to indemnify Fleetwood and Robert and Patricia Fleetwood. It imposes no obligation on Ram or Reich.

## CONCLUSION

Giardina's motion to dismiss the Amended Complaint is DENIED. Dkt. No. 32. Fleetwood's motion to dismiss the counterclaim against it is GRANTED. Dkt. No. 35. The motion of Ram and Reich to dismiss the crossclaims against them is GRANTED. Dkt. No. 39.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 32, 35, and 39.

SO ORDERED.

Dated: May 18, 2021
New York, New York

LEWIS J. LIMAN
United States District Judge