UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                         :

FLEETWOOD SERVICES, LLC,            :

                          :

           Plaintiff,        :

                          :            20-cv-5120 (LJL)

      -v-                    :

                          :       OPINION AND ORDER

RAM CAPITAL FUNDING, LLC, TSVI REICH a/k/a  :
STEVE REICH, RICHMOND CAPITAL GROUP LLC  :
n/k/a RCG ADVANCES LLC, and ROBERT      :
GIARDINA,                        :

                          :

          Defendants.      :

                          :

------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Plaintiff Fleetwood Services, LLC ("Plaintiff" or "Fleetwood") moves, pursuant to Federal Rule of Civil Procedure 58, for entry of judgment against defendant Robert Giardina in the amount of $308,851.  Dkt. No. 94.

       For the following reasons, the motion for judgment is granted in part.

## BACKGROUND AND PROCEDURAL HISTORY

       The facts underlying this dispute were set forth in detail in the Court's opinion granting in part and denying in part Plaintiff's motion for summary judgment.  *See Fleetwood Services, LLC v. Ram Capital Funding, LLC*, 2022 WL 1997207 (S.D.N.Y. June 6, 2022).  In brief, Fleetwood, a small Texas business, sued corporate individuals and entities with whom Fleetwood had entered into a financing agreement (the "Agreement").  Those entities and individuals are: Richmond Capital Group n/k/a RCG Advances LLC ("Richmond"), a New York limited liability company that also operates under the name Ram Capital Funding ("Ram Capital"), Dkt. No. 79 ¶ 2; Robert Giardina ("Giardina"), the founder and sole managing member of Richmond, *id.* ¶ 3;

and Ram Capital Funding LLC ("Ram LLC") and Tsvi Reich a/k/a Steve Reich ("Reich"), who were initially named as defendants in this action but as to whom Fleetwood filed a notice of voluntary dismissal after entering into a settlement agreement with those entities in September 2020, *see* Dkt. No. 13; Dkt. No. 28 at 1 n.1; Dkt. No. 38-14.  Fleetwood thereafter filed an amended complaint (the "Complaint"), asserting claims against Richmond and Giardina only. *See* Dkt. No. 28.

Fleetwood asserted causes of action for breach of contract and breach of the duty of good faith and fair dealing ("Count One"); money had and received ("Count Two"); violation of the Texas usury statute, Tex. Fin. Code § 305.001(a-1) and § 305.003 ("Count Three"); attorneys' fees pursuant to a provision of the Texas usury statute, Tex. Fin. Code § 305.005 ("Count Four"); and a violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against Giardina ("Count Five").  After the Court denied Giardina's motion to dismiss, *see Fleetwood Services, LLC v. Ram Capital Funding LLC*, 2021 WL 1987320 (S.D.N.Y. May 18, 2021), Fleetwood filed a motion for summary judgment, seeking judgment on all of its claims against Richmond and Giardina, Dkt. No. 74.

By Opinion and Order dated June 6, 2022, the Court granted the motion for summary judgment as to liability with respect to Count Five against Giardina; the Court otherwise denied the motion.  *Fleetwood Services, LLC*, 2022 WL 1997207, at *21.  In its Opinion, the Court held that the Agreement was properly characterized as a loan and agreed that "the debt incurred pursuant to the Agreement is unenforceable at least in part under either Texas or New York laws relating to usury," explaining that Richmond and Giardina did not challenge the expert calculation of the interest rate on the face of the relevant agreement, calculated to be 99.8% per year.  *Id.* at *20.  The Court did not determine the amount to which Fleetwood was entitled or

direct entry of a final judgment in favor of Fleetwood on the claim.  The Court concluded that Fleetwood suffered financial harm sufficient to show that it was "damaged" by a RICO violation and observed that it was undisputed "that $119,617 was collected from Fleetwood's account by Richmond." *Id.* at *21 (quoting Dkt. No. 81 at 21–22).  However, it also observed that a setoff may be appropriate in light of the settlement agreement Fleetwood entered into with Ram LLC and Reich.  *Id.* at *21.

Following a status conference held in the matter, the Court issued an Order directing Fleetwood to file a motion for entry of judgment on its RICO claim against Giardina, setting forth "the amount for which it claims judgment and the basis for such amount, as well as its request that, if the Court enters judgment against Robert Giardina, it dismiss all claims other than the RICO claim against the remaining defendant Richmond Capital Group LLC."  Dkt. No. 89.

On June 28, 2022, Fleetwood filed its motion for entry of judgment against Giardina, seeking judgment in the amount of $308,851.  Dkt. No. 94.  In its memorandum of law submitted in support of the motion, Fleetwood framed the issue as follows:

> Although the Court determined that Fleetwood had been damaged in the amount of the unlawful debt that was collected ($119,617), the Court did not enter final judgment against Giardina on the RICO claim because he alleged that he was entitled to offset the then undisclosed amount paid by [Ram LLC and Reich] pursuant to a confidential settlement agreement.[]  Thereafter, Fleetwood agreed to dismiss its Texas statutory claims and its breach of contract and unjust enrichment claims, leaving only the RICO claim against Giardina to be pursued.

Dkt. No. 94-1 at 2–3.  Fleetwood also agreed to dismiss Count One, Count Two, Count Three, and Count Four of the Complaint.  *See id.* at 5, 8.  On July 18, 2022, Giardina submitted an opposition, arguing both that that the correct calculation of damages is $84,001 and that "Plaintiff has suffered no damages, as they were made whole by the settlement with [Ram LLC and Reich]."  Dkt. No. 98 at 5.  Fleetwood thereafter submitted a reply.  Dkt. No. 101.  On August 10, 2022, counsel for Richmond and Giardina filed a letter with the Court asking that the

dismissal agreed to by Fleetwood of the non-RICO claims be with prejudice "[i]n order to ensure finality in this litigation and to prevent future litigation on the same claims that plaintiff has agreed to dismiss." Dkt. No. 103 at 1.

## DISCUSSION

The remaining outstanding issue in this case is the quantity of damages to which Fleetwood is entitled on its RICO claim. Fleetwood asserts it is entitled to $308,851, three times the amount collected on the Agreement ($119,617) minus the $50,000.00 Fleetwood obtained by settling with Ram LLC and Reich (($119,617 x 3 = $358,851) – $50,000). Dkt. No. 94-1 at 3. Giardina's brief appears to argue that Fleetwood is either entitled only to $84,001 or is entitled to nothing. Dkt. No. 98 at 5.

Fleetwood's argument is straightforward: $119,617 was taken from its account in connection with the Agreement and, because the Agreement is void and unenforceable as a usurious loan under either Texas or New York law, it was damaged in this amount. Dkt. No. 94-1 at 6–7.[1] Giardina's argument is less straightforward; he contends that Fleetwood made a judicial admission that it was only damaged in the amount of $44,667 in its Complaint and is bound by that admission. Giardina cites portions of the Complaint that show that Fleetwood sought that amount in connection with its breach of contract/breach of duty of good faith claim

---

[1] In its opening brief, Fleetwood repeatedly suggests that the Court "determined that Fleetwood had been damaged in the amount of the unlawful debt that was collected ($119,617)." Dkt. No. 94-1 at 2; *see also id.* at 4–5 ("By the June 2022 Opinion . . . , the Court determined, among other things, that: . . . Fleetwood was damaged in the amount of $119,617 . . . , the undisputed amount collected by Richmond."). That is not quite right. In concluding that Fleetwood suffered damages sufficient to sustain a RICO claim, the Court agreed that there was no dispute that $119,617 was collected from Fleetwood's account in connection with the Agreement and that, even if the settlement amount was somewhere around $40,000, "it would fall well below the actual damages suffered by Plaintiff." *Fleetwood Services, LLC*, 2022 WL 1997207, at *21. The Court did not find that the "actual damages" were $119,617, and the precise quantum of actual damages was not a question before the Court at that time.

and money had and received claim and stated that this was the amount that was in excess of what "Richmond was entitled to debit from [Fleetwood's] Account." Dkt. No. 28 ¶ 54; *see also* Dkt. No. 98 at 1 ("Plaintiff's [sic] affirmatively stated they were damaged in the amount of $44,667 (Comp. ¶ 54 as well as Relief sought for Counts I and II) and now attempt to cajole this court into believing that the damages were in fact nearly two and a half times the amount originally plead."). His arguments that Fleetwood is entitled to either $84,001 or nothing flow from this $44,667 figure; his calculation of $84,001 is $44,667 trebled minus $50,000 for the settlement (($44,667 x 3 = 134,001) – $50,000), and his argument that Fleetwood suffered no damages—a contention the Court already rejected—is based on the fact that Fleetwood settled with Ram LLC and Reich for $50,000, which is more than $44,667. Giardina also argues that the $119,617 figure is incorrect because Fleetwood paid back the original $50,000 that was advanced to it and therefore the "$119,617 calculation must be reduced by the principal advanced along with any interest paid" on that amount. *Id.* at 2. He does not offer a total figure for the "initial advance as well as the interest collected thereon" that should be subtracted from $119,617, but he does appear to assume the subtraction would result in a figure that is less than the $50,000 settlement amount. *See id.* at 4 (arguing that Fleetwood must subtract the principal advanced and interest to properly calculate damages and that "Fleetwood was compensated more than their [sic] actual damages of $44,667, with their [sic] settlement with [Ram LLC and Reich], which was in the amount of $50,000.").[2]

---

[2] Giardina also includes arguments in his opposition that speak to whether the Agreement was properly found to be a usurious loan. *See, e.g.*, Dkt. No. 98 at 3 ("To void Fleetwood's original advance, which Fleetwood fully performed thereunder, would disrupt the injury and would subject Defendant to ex post facto consequences. . . . Plaintiff paid their obligations to Defendant as they have done in other merchant cash advance transactions, and now wish to invalidate the agreement. Simply stated, this is not allowed by black letter law."). Giardina did not move for reconsideration of the Court's June 2022 Opinion and Order, and the Court will not

Giardina's arguments suffer from a few fatal flaws.  The first and most obvious is that Fleetwood did not make a judicial admission that it was only damaged in the amount of $44,667. "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re. Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *see also Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).  "A judicial admission is a statement made by a party or its counsel which has the effect of withdrawing a fact from contention and which binds the party making it throughout the course of the proceeding." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (per curiam).  "[A] statement must 'have sufficient formality or conclusiveness to be a judicial admission'" and it must be a statement of fact rather than a legal conclusion. *Id.* (quoting *Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965)).  Not only must a statement "be a formal statement of fact," but it "must also be intentional, clear, and unambiguous." *Id.* at 361.

Fleetwood's request for $44,667 in damages in connection with its breach of contract claim and its money had and received claim does not constitute a judicial admission that it was damaged solely in that amount.  Even assuming that the quantum of damages suffered could constitute a judicial admission, the Complaint is clear that Fleetwood is alleging it was damaged in the amount of $44,667 only in connection with two of its causes of action—its claim for breach of contract/breach of good faith and its claim, brought in the alternative, for money had and received.  *See* Dkt. No. 28 ¶¶ 124, 129; *id.* at 30 (i)–(ii).  The Court did not grant summary judgment on these claims, and they are not the subject of the instant motion; indeed, Fleetwood

---

consider these arguments insofar as they relate to Giardina's liability on the RICO claim or the conclusion that the Agreement was a loan with a facially usurious interest rate.

has agreed to dismiss them.  With respect to the RICO claim, Fleetwood did not limit its

damages allegations to the $44,667 sought in connection with Count One and Count Two.  It

alleged that:

> The injuries to the Plaintiff directly, proximately, and reasonably foreseeably
> resulting from or caused by these violations of [RICO] include, but are not limited
> to, the tens of thousands of dollars paid to . . . Richmond by the Plaintiff or
> otherwise collected by . . . Richmond, at the direction of Giardina, on account of
> the usurious and otherwise unenforceable Fleetwood Agreement and attorneys'
> fees and costs, including the attorneys' fees and costs associated with exposing and
> prosecuting Giardina's unlawful activities.

*Id.* ¶ 178.  These damages were quantified in the Complaint as follows: "actual damages

Giardina [sic] in an amount to be determined at trial *but not less than $119,617* and treble

damages of an amount not less than $358,851, together with attorney fees in amount [sic] to be

determined at trial but, in any event, not less than $50,000."  *Id.* at 31 (v) (emphasis added).

Fleetwood cannot be said to have admitted that it was only damaged in the amount of $44,667 in

connection with a claim for which it expressly sought "actual damages" of $119,617, much less

to have *unambiguously* admitted as much.  To the extent Giardina's arguments that Fleetwood's

damages should be limited to $84,001 or zero rests on a conclusion that Fleetwood admitted it

was only damaged in the amount of $44,667, the arguments fail because Fleetwood did not make

any such admission.

Giardina's alternative argument that Fleetwood suffered no damages because the amount

that it paid back in principal and interest must be deducted from the $119,617 figure also fails.

Giardina's argument assumes that both the principal provided and then returned and interest paid

on a usurious loan for the use of that principal should be deducted from the damages recoverable

for a RICO violation concerning that loan.  But this would permit Giardina to retain (or at least

receive credit for) the illegally obtained interest and runs afoul of "[t]he remedial purpose of

RICO," which is "to put the injured plaintiff in the same financial position it would have been in

absent the misconduct." *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp.

2d 486, 521 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (citing *Bankers Trust Co. v.

Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1998)); *see also Comm. Union Assur. Co., plc v. Milken*,

17 F.3d 608, 612 (2d Cir. 1994) ("[D]amages as compensation under RICO § 1964(c) for injury

to property must, under the familiar rule of law, place appellants in the same position they would

have been in but for the illegal conduct."). It would give Giardina the benefit of his unlawful

conduct. Absent the usurious loan—the "unlawful debt" that forms the basis for Giardina's

RICO violation— Fleetwood would not have paid the usurious interest. Subtracting from the

recoverable damages the interest that was unlawfully collected would not "put the injured

plaintiff in the same financial position it would have been in absent the misconduct," it would

put Fleetwood in a worse position. *World Wrestling Entertainment, Inc.*, 530 F. Supp. 2d at

521.[3]

It does not follow, however, that Fleetwood is entitled to the full amount that was debited

from its account. RICO makes it "unlawful for any person employed by or associated with any

enterprise engaged in . . . interstate or foreign commerce, to conduct or participate . . . in the

conduct of such enterprise's affairs through a . . . collection of unlawful debt." 18 U.S.C.

§ 1962(c). It defines "unlawful debt" to include a debt "which is unenforceable under State or

Federal law in whole or in part as to principal or interest because of the laws relating to usury,"

and "which was incurred in connection with . . . the business of lending money . . . at a rate

usurious under State or Federal law, where the usurious rate is at least twice the enforceable

---

[3] Giardina argues that Fleetwood's damages calculation must be reduced by the principal and
"any interest paid," Dkt. No. 98 at 2; he does not argue that the damages incurred by Fleetwood
should be reduced by a different measure of interest to account for Fleetwood's enjoyment of the
time value of the loan it received. Accordingly, the Court need not and does consider whether, in
a different or hypothetical case, damages should be adjusted for the time value of money.

rate." *Id.* § 1961(6).  A defendant is not guilty of unlawful debt collection under RICO unless the plaintiff establishes those elements.  But the question of the damages available to the plaintiff who establishes a RICO violation does not turn on that language which establishes liability but rather on a separate section of the law that guides courts in measuring the proper damages a RICO victim should be awarded.

RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . shall recover threefold the damages he sustains."  18 U.S.C. § 1964(c).  The damages Fleetwood sustained as a result of the RICO violation was not the full amount that was taken from its bank account because it also received funds into its bank account in connection with the violative transaction.  "[T]he purpose of a civil RICO award is to return the plaintiff to the same financial position he would have enjoyed absent the illegal conduct."  *Trs. of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1146 (S.D.N.Y. 1995) (Chin, J.).  That is, a RICO plaintiff "*can only recover to the extent* that[] he has been injured in his business or property by the conduct constituting the violation."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (emphasis added).  A proper calculation of the damages sustained "by reason of a violation of [RICO]," 18 U.S.C. § 1964(c)—one that puts Fleetwood in the same financial position that it would have occupied absent the illegal conduct—requires a reduction of the financial benefit that it received at the time of the transaction.  *Cf. Harvey v. Home Savers Consulting Corp.*, 2011 WL 13298705, at *8 (E.D.N.Y. Mar. 3, 2011), *report and recommendation adopted*, *Harvey v. Home Savers Consulting Corp.*, No. 1:07-cv-02645-JG-SMG, Mar. 23, 2011 ECF Entry (E.D.N.Y. Mar. 23, 2011) (explaining, in context of RICO damages for fraud, that "the general rule is that a plaintiff may recover for the out-of-pocket losses caused by defendant's fraud reduced by any benefit the

plaintiff obtained as a result of the transaction"). Such a calculation comports with the rule that RICO damages are not meant to put the plaintiff in a better financial position than it would have been in in the absence of the illegal conduct. *See, e.g.*, *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 297, 311 (S.D.N.Y. Feb. 19, 2010) (reviewing cases where "plaintiffs ran afoul of the rule that RICO damages cannot place plaintiffs in a better position than they would have been in if the racketeering had not occurred"); *Kesick v. Ulloa*, 2013 WL 1867111, at *1 (N.D.N.Y. May 3, 2013) (denying application for treble damages based upon amount paid for asserted RICO damages of attorneys' fees and costs where the plaintiff's "proof indicates that she did not pay these fees or costs" and therefore "a damage award to [p]laintiff based upon these costs and fees would place [p]laintiff in a better financial position th[a]n she would have occupied absent the illegal conduct").

Thus, treating as damages the full $119,617 that was deducted from Fleetwood's account would not account for the fact that Fleetwood also received a financial benefit from that Agreement through the funds Richmond advanced to it. As the Court explained in its June 2022 Opinion and Order, in November of 2016, $44,500 was wired from Richmond's bank account to Fleetwood's bank account. *See Fleetwood Services, LLC*, 2022 WL 1977207, at *4. Absent the illegal conduct, Fleetwood would not have received this sum, just as Fleetwood would not have paid back $119,617. If Fleetwood's position were to be adopted, Fleetwood would be able to count as damages an amount of which that it was never actually deprived as a result of the usurious transaction—in other words, an injury that never actually accrued—resulting in a windfall to Fleetwood. The Court will treble the actual damages suffered by Fleetwood by way of the RICO violation of $75,117, the result of subtracting $44,500 from $119,617.

The Second Circuit in *Commercial Union Assurance Co., plc v. Milken* and the cases on which that decision rests support this approach.  In *Milken*, the Circuit held that where a group of investors suffered no out-of-pocket loss as a result of a purported fraud because the amount that it paid for a partnership interest was less than the value of what it received (a partnership interest that yielded a gain on their capital invested), the investor had no provable damages under RICO and thus could not maintain a RICO action.  17 F.3d at 612.  The court stated: "If a portion or all of [plaintiffs'] investment in the partnership was unrecoverable, a treble damage award might be appropriate, assuming the other RICO requirements were satisfied."  *Id.*  But, it concluded: "damages as compensation under RICO . . . must, under the familiar rule of law, place appellants in the same position they would have been in but for the illegal conduct.  Here appellants have already been placed by defendants in that position."  *Id.* at 613.

The Circuit's decision in *Milken* relied on its decision the previous year in *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993).  As the Circuit later described it, "plaintiff held several outstanding state-court judgments against the defendants, which defendants had artfully avoided paying through the use of fraudulent transactions." *Milken*, 17 F.3d at 612.  The Circuit rejected plaintiff's claim that it was entitled to trebling of the amount that was owed to it at the time it instituted the lawsuit because the debt had not yet been "lost" and it appeared that the judgment was "likely to be fully satisfied."  995 F.2d at 1165.  The Circuit stated "a debt is 'lost' and thereby comes a basis for RICO trebling only if the debt (1) cannot be collected (2) 'by reason of' a RICO violation."  *Id.*  In both *Milken* and *Stochastic*, the Circuit rejected the argument that allowing the purported RICO wrongdoer to receive credit for the value received by its purported victim in determining whether there existed RICO damages was akin to "permitting a defendant to avoid treble damages by paying

compensatory damages prior to entry of the judgment" and claimed that it would "vitiate[e] the remedial nature of RICO."  *Stochastic*, 995 F.2d at 1166; *Milken*, 17 F.3d at 612–13.  In both, damages were calculated based on the value of what the plaintiff received less the value of what it lost.  As the Circuit put it in *Stochastic*, in the context of a lost debt claim, "such a RICO claim does not accrue until it is established that collection of the claim or judgment has been successfully frustrated.  In other words, to the extent of a successful collection, the RICO claim is abated *pro tanto*, prior to any application of trebling."  *Id.* at 1166.

Likewise, the measure of the damages incurred by Fleetwood here must be calculated by the amount that it paid less that which it received.  The amount paid to Fleetwood at the time the parties entered into the Agreement is not "compensation for RICO injuries," *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 2018 WL 2455437, at *21 (S.D.N.Y. June 1, 2018), *report and recommendation adopted as modified*, 341 F. Supp. 3d 334 (S.D.N.Y. 2018), but rather relates to the injury suffered in the first instance in connection with a violation.  As a result of the collection of an unlawful debt, Fleetwood was worse off by $75,117.  This is the amount by which it is injured "by reason of a violation of [RICO]," and this is the amount that will be trebled, as required by that statute.  18 U.S.C. § 1964(c).

Fleetwood's arguments do not persuade the Court that a different result is required.  Fleetwood argues that, because "under either Texas or New York law, Richmond was not entitled to collect any principal or interest in connection with the underlying transaction," "in order to place Fleetwood in the same financial position it would have occupied absent the illegal conduct, the $119,617 must be returned to Fleetwood."  Dkt. No. 94-1 at 6–7 (internal quotation marks omitted and alteration adopted).  The New York Court of Appeals has made clear that loans that violate the criminal usury statute—those charging interest at a rate above 25% per

annum—"are subject to the same consequence as any other usurious loans: complete invalidity of the loan instrument." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612, 621 (N.Y. 2021). "[T]he borrower can simply keep the borrowed funds and walk away from the agreement." *Seidel v. 18 E. 17th St. Owners, Inc.*, 598 N.E.2d 7, 9 (N.Y. 1992). Similarly, in Texas, a creditor who charges and receives interest above the amount allowed by law is liable for either a multiple of the excess interest charged or for the principal amount on which the interest is charged and received and the interest and other amounts charged and received, depending on how far above the legal rate the usurious interest rate charged is. Tex. Fin. Code §§ 305.001 *et seq.* Neither the New York nor the Texas statute, however, or the cases under them, purport to measure the damages to the borrower in a usurious transaction. The New York law is a creature of statute. The forfeiture of principal and interest constitutes a "penalty" which is designed to "serv[e] a strong deterrent effect—one the legislature has repeatedly affirmed." *Adar Bays*, 179 N.E.3d at 620. Texas courts similarly treat usury statutes as "penal in nature." *Bayview Loan Servicing, LLC v. Martinez*, 2016 WL 825670, *6 (Ct. App. Tx. Mar. 3, 2016); *see also Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 476 (Tx. 1988) ("The penalty in usury cases given to the 'usuree' is a boon or a windfall which he is allowed to receive as a punishment to the usurious lender, not as interest for the use of the borrower's money."). The federal RICO statute already imposes a penalty on the collector of an unlawful debt in the form of trebling the damages incurred by the borrower. Fleetwood here had the option to elect to proceed under either a usury statute or a RICO statute. It elected to proceed under the RICO statute. RICO provides a cause of action separate and apart from those available under New York or Texas law, incorporating those laws only to the extent that they define what sort of "unlawful debt" cannot be collected. *See* 18. U.S.C. § 1961(6); *cf. Getz v. Penthouse Int'l, Ltd.*, 655 F. Supp. 1203, 1207

(S.D.N.Y. 1987) (explaining that the Second Circuit has "noted that the elements of a civil RICO cause of action predicated on the collection of an unlawful debt were very different than the elements of a state law usury claim").  It would be inappropriate for the Court then to assess Giardina not just the damages he caused but impose a penalty under state law and then to treble that by applying federal law.

This approach does not put the Court in the position of aiding the putative wrongdoer in collecting an unlawful debt.  The courts will not, of course, lend their hand in enforcing an illegal contract.  *See McMullen v. Hoffman*, 174 U.S. 639, 654 (1899) ("The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract."); Restatement (Second) of Contracts § 178(1) ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable . . . .").  And a usurious agreement is an illegal contract.  It may follow therefore that when a lender extends credit to a borrower pursuant to an illegal agreement, the lender may not then come to the courts either to retrieve the principal extended or to collect the unlawful interest owed.  But that is not the situation here.  The Court is not being asked to help Giardina recover funds from Fleetwood; it is being asked to measure the damages suffered by Fleetwood and then to treble them to accomplish RICO's punitive ends.

Fleetwood was damaged in the amount of $75,117, the sum that was debited from its account less the sum it received and was able to enjoy.  It is entitled to have that sum trebled under RICO, 18 U.S.C. § 1964(c).  As the Court explained in its June 2022 Opinion and Order, the trebled amount thus must be reduced by the amount Fleetwood received in settlement with Ram LLC and Reich.  That result too is consistent with *Milken*; it recognizes that the settlement amount was not value received by Fleetwood as part of the loan transaction but compensation

paid to it for the wrong caused to it by Defendants. *See Forde*, 2018 WL 2455437, at *21–22 (explaining that the court would "follow the many court decisions that deduct compensation for RICO injuries only after the trebling of damages" and explaining that *Milken* does not compel a different result because the *Milken* court "rejected the notion that the payments amounted to settlements"); *Chubb & Son Inc. v. Kelleher*, 2010 WL 5978913, at *8 (E.D.N.Y. Oct. 22, 2010), *report and recommendation adopted*, 2011 WL 839553 (E.D.N.Y. Mar. 7, 2011) ("Where plaintiffs are entitled to treble damages under federal law, courts have upheld the trebling of damages before crediting settlement payments."); *Allstate Ins. Co. v. Polack*, 2012 WL 4489282, at *7 (E.D.N.Y. Sept. 12, 2012), *report and recommendation adopted*, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012) (same).

The Court thus will award Fleetwood damages on its RICO claim in the amount of $175,351.00 (($75,117 x 3 = $225,351) – $50,000).

\* \* \*

Fleetwood has agreed to dismiss Counts One through Four of its Complaint. Richmond and Giardina have requested that this dismissal be with prejudice. At oral argument held in this matter, Fleetwood agreed to dismiss those causes of action with prejudice. The Court will therefore dismiss these claims with prejudice.

## CONCLUSION

The motion for entry of judgment is GRANTED in part, and Counts One, Two, Three, and Four of Fleetwood's Complaint are DISMISSED with prejudice. The Clerk of Court is respectfully directed to enter judgment in favor of Fleetwood and against Giardina on Count Five in the amount of $175,351.00. Fleetwood shall make any application for attorneys' fees within thirty (30) days of the entry of judgment.

The Clerk of Court is respectfully directed to close Dkt. No. 94.


SO ORDERED.


Dated: August 17, 2022
      New York, New York

                                           LEWIS J. LIMAN
                                United States District Judge