UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                    :
FLEETWOOD SERVICES, LLC,                                            :
                                                                    :
                                    Plaintiff,                       :
                                                                    :
              -v-                                                    :          20-cv-5120 (LJL)
                                                                    :
RAM CAPITAL FUNDING, LLC, TSVI REICH a/k/a                          :          MEMORANDUM &
STEVE REICH, RICHMOND CAPITAL GROUP LLC                             :          ORDER
n/k/a RCG ADVANCES LLC, and ROBERT                                 :
GIARDINA,                                                           :
                                                                    :
                                    Defendants.                     :
                                                                    :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/05/2023

LEWIS J. LIMAN, United States District Judge:

Plaintiff Fleetwood Services, LLC ("Plaintiff") moves, pursuant to Federal Rule of Civil

Procedure 54(d)(2) and 18 U.S.C. §§ 1962(c) and 1964(c), for an award of attorney's fees and

costs.  Dkt. No. 109.

For the following reasons, the motion for an award of attorney's fees and costs is granted

in part and denied in part.

## BACKGROUND

Familiarity with the facts and record in this case as recounted in the Court's opinion and

order granting summary judgment to Fleetwood is assumed.  *See* Dkt. No. 87.  Plaintiff is a small

Texas business, providing golf-course construction and development, renovation, and

remodeling of courses and country clubs in and around the Dallas area.  Dkt. No. 79 ¶ 11.  Its

owners are Pamela Fleetwood and Robert Fleetwood.  *Id.* ¶ 15.  The defendants include

Richmond Capital Group n/k/a RCG Advances LLC ("Richmond"), a New York limited liability

company that also operates under the name Ram Capital Funding, *id.* ¶ 2, and Robert Giardina

("Giardina" and together with Richmond, "Defendants"), the founder and sole managing member of Richmond.  *Id.* ¶ 3.[1]

Fleetwood was a party to a Merchant Cash Agreement ("MCA"), dated on or about November 28, 2016, ostensibly signed by Ram Capital Funding LLC ("RAM LLC") but funded by Richmond.  *Id.* ¶ 13.  Pursuant to the terms of the MCA, RAM LLC agreed to advance Plaintiff $100,000 in exchange for the purported purchase of what was defined as all of Plaintiff's "future receivables" until Fleetwood had repaid the sum of $149,900 (the "Purchased Amount").  *Id.* ¶ 16.  The Purchased Amount was to be repaid through daily ACH withdrawals from a designated account (the "Designated Account"), each in the equal amount of $1,399, which purportedly equaled 10% of Plaintiff's daily receipts.  *Id.* ¶ 17.  In fact, Richmond, and not RAM LLC, wired Plaintiff $44,500, half of the amount agreed upon amount less applicable fees. *Id.* ¶¶ 21–23.  Over time, Richmond withdrew $119,617 from the Designated Account, which was $44,667 more than Richmond was entitled to under the MCA based on its 50% advance to Plaintiff.  *Id.* ¶ 31.  When Plaintiff informed Richmond that it did not have the receivables to fund the account and asked for a "pause" in its daily payments, Richmond informed Plaintiff that the failure to fund the account would put Plaintiff in automatic default, entitling Richmond to immediate repayment of the full $149,900.  *Id.* ¶¶ 27–28.  Although the MCA ostensibly contained a reconciliation provision to ensure that the amount paid would equal the specified percentage of Plaintiff's receivables, Richmond never conducted a reconciliation and the provision was largely illusory.  *Id.* ¶ 52–53.  Although the MCA was labeled a contract for future

---

[1] Ram Capital Funding LLC and Tsvi Reich a/k/a Steve Reich were initially named as defendants in this action, but Fleetwood voluntarily dismissed its claims against them after entering into a settlement agreement with those entities in September 2020.  *See* Dkt. No. 13; Dkt. No. 28 at 1 n.1; Dkt. No. 38-14.

receivables, the Court concluded it constituted a loan.  *See* Dkt. No. 87 at 17–30.  On its face, the payments due from Fleetwood translated into a nominal interest rate of 99.8% per year.  Dkt. No. 79 ¶ 47.  Taking into account excess withdrawals made by Richmond from the account funded by Fleetwood, the nominal interest rate was actually 278.5% per year.  Dkt. No. 76 at 35.

The MCA was one of many similar agreements negotiated by Giardina and Richmond. Beginning at least as early as July 2015 and continuing through the end of 2018, Richmond was in the business of advancing funds to small businesses in Texas and throughout the United States through merchant agreements.  Dkt. No. 79 ¶ 4.  Each of these agreements contained identical assignment and payment language, representations and warranties, events of default, default rights and remedies, a security agreement, a personal guaranty, a reconciliation provision, and Automated Clearing House (ACH) authorization terms.  *Id.* ¶ 5.  The undisputed evidence at summary judgment established that Richmond never performed any reconciliations and failed and refused to reduce daily payments when a merchants' receivable collections slowed.  *See id.* ¶¶ 54, 71.  Instead of reducing the daily payments, Richmond threatened to destroy the merchant's business and, in some instances, implied that it would harm the merchant's owner if the merchant failed to make the requisite daily payments.  *Id.* ¶ 72.

The New York Attorney General has filed a state-court petition against Richmond, Giardina, and others, dated June 10, 2020, alleging that they preyed upon thousands of small businesses throughout the United States by offering and funding merchant cash advances that were fraudulent usurious loans with interest rates in the triple and even quadruple digits.  *Id.* ¶¶ 66–67.  The Federal Trade Commission thereafter also filed a separate action against Richmond, Giardina, and others alleging that the defendants engaged in deceptive conduct in connection with their merchant cash advances.  *Id.* ¶¶ 68-69.

Plaintiff's First Amended Complaint in this action contained five causes of action. Dkt No. 28. Plaintiff's first cause of action asserts a claim for breach of contract and breach of the duty of good faith and fair dealing. *Id.* ¶¶ 114–24. Plaintiff's second cause of action pleads, in the alternative, a claim for money had and received. *Id.* ¶¶ 125–29. The third count pleads a claim for violation of the Texas usury statute, Tex. Fin. Code § 305.001(a-1) and § 305.003, on the theory that the sums extended pursuant to the MCA were a loan and that the rate of interest on that loan was 400%, more than twice the maximum of 28% permitted by Texas law and above the rate of interest permitted by New York law. *Id.* ¶¶ 130–49. The fourth count contains a claim for reasonable attorneys' fees under the Texas usury statute, Tex. Fin. Code § 305.001 and 305.003. *Id.* ¶¶ 150–53. Finally, count five asserted a claim for violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against Giardina. *Id.* ¶¶ 154–79.

On June 6, 2022, after discovery in this case concluded, the Court issued an Opinion and Order granting summary judgment for Plaintiff on its fifth cause of action against Giardina for violations of RICO. Dkt. No. 87. The Court concluded that the MCA constituted a loan, *id.* at 17–30, and that the elements of RICO were satisfied because Plaintiff had offered undisputed evidence that Richmond was a RICO enterprise and that Giardina had participated in the affairs of that enterprise through the collection of unlawful debt, *id.* at 43–50. The Court reasoned: "Richmond was engaged in the business of lending money at usurious rates over the course of years by advancing funds to small businesses across the country and entering into agreements with these businesses that contained identical language to the Agreement the Court has concluded was a usurious loan." *Id.* at 47. The Court denied Fleetwood's motion for summary judgment on the third count, alleging violations of the Texas usury statute, concluding that a

question of fact existed with respect to whether Texas law was applicable to the MCA. *Id.* at 32–43. Plaintiff sought summary judgment on its breach of contract and claims for money had and received claims in the alternative, in the event the Court determined that the loan did not violate the Texas usury statute. *Id.* at 50. The Court concluded that, because issues of fact with respect to the choice-of-law provision precluded summary judgment for Plaintiff on the Texas usury claim, Plaintiff's argument in the alternative was premature. *Id.*

On June 28, 2022, Plaintiff filed a motion for entry of judgment against Giardina, with the damages to which it claimed it was entitled on its fifth cause of action. Dkt. No. 94. On July 18, 2022, Giardina submitted a memorandum in opposition to the motion for entry of judgment. Dkt. No. 98. On August 4, 2022, Plaintiff submitted its reply memorandum in further support of its motion for judgment against Giardina. Dkt. No. 101. The Court held a hearing on the motion on August 17, 2022. *See* Dkt. No. 104. On August 17, 2022, the Court entered an opinion and order granting Plaintiff's motion for final judgment in this action in favor of Plaintiff and against Giardina. Dkt. No. 105. The Court directed the Clerk of Court to enter judgment in favor of Plaintiff and against Giardina in the amount of $175,351, treble the $75,117 in damages Plaintiff suffered in this case. *Id.* at 15. Pursuant to the agreement of the parties, the Court dismissed Counts One to Four of the Complaint with prejudice. *Id.* at 3–4; Dkt No. 94-1 at 5, 8, 15.

On September 7, 2022, Plaintiff filed this motion for attorney's fees and a memorandum of law and an affidavit and declaration in support of the motion. Dkt. Nos. 109–12. On September 30, 2022, Giardina filed a memorandum of law in opposition to the motion. Dkt. No. 117. On October 6, 2022, Plaintiff filed a reply memorandum of law in further support of the motion. Dkt. No. 118.

## DISCUSSION

Plaintiff asks the Court to award it attorney's fees of $636,334 and costs of $10,647.21. After first reviewing the relevant legal principles, the Court assesses Plaintiff's counsel's reasonable hourly rate and the reasonable number of hours for which Plaintiff seeks compensation. It then determines whether a multiplier should be applied. Finally, the Court considers Plaintiff's application for costs.

### I.      Relevant Legal Principles

Section 1964(c) of Title 18 provides "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorneys' fee." 18 U.S.C. § 1962(c). In determining a reasonable fee, "[t]he district court must ascertain whether 'the requested rates are in line with those prevailing in the community *for similar services by lawyers of reasonably comparable skill, experience and reputation*.'" *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (emphasis in original). "[T]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021) (quoting *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019)).

The Court also considers the twelve *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and

length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*, 522 F.3d 182, 187 n.3 (2d Cir. 2008)).

"A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018) (quoting *E.F. ex rel. N.R. v. N.Y. City Dep't of Educ.*, 2014 WL 1092847, at * 3 (S.D.N.Y. Mar. 17, 2014)); *see also C.B. v. N.Y. City Dep't of Educ.*, 2019 WL 3162177, at *5 (S.D.N.Y. July 2, 2019) (same). Moreover, the fee award need not be proportionate to the damages award. *Grant v. Martinez*, 973 F.2d 96, 101–02 (2d Cir. 1992).

After determining a reasonable hourly rate, the Court multiplies "that rate by the number of hours reasonably expended to determine the presumptively reasonable fee." *Lilly*, 934 F.3d at 230. "To calculate . . . attorneys' fees, courts apply the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *A.R. ex rel. R.V.*, 407 F.3d at 79 (cleaned up) (quoting *G.M. v. New Britain Bd. Of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)). "[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee." *Id.* (quoting *G.M.*, 173 F.3d at 84); *accord I.B. ex rel. Z.B. v. N.Y. City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam).

## II.     Reasonable Hourly Rate

Two attorneys worked on this matter for Plaintiff: Shane Heskins ("Heskins") and Stuart Wells ("Wells"). Plaintiff seeks an hourly rate of $750 per hour for Heskins and $575 per hour for Wells. Dkt. No. 110 at 5. Giardina argues that the rates are unreasonable, but he does not propose alternative rates. Dkt. No. 117 at 7–8.

In 2019, a court in this District found that rates from $500 per hour to $600 per hour are reasonable "for estimable experienced counsel in complex commercial litigation." *COR, LLC v. First Standard Financial CO., LLC*, 2019 WL 1090480, at *4 (S.D.N.Y. Mar. 8, 2019); *see Elsevier Inc. v. Grossmann*, 2019 WL 3852484, at *7 (S.D.N.Y. Aug. 16, 2019) (approving fee awards of $525 per hour for two partners, one with thirty-two and the other with thirty-eight years of experience). Another court that same year, in a Lanham Act case, found that "hourly rates, ranging from $315–$585 per hour for an associate . . . [and] between $625 and $845 per hour for a partner, are reasonable considering the prevailing rates for firms engaging in complex litigation in this district." *Tiffany & Co. v. Costco Wholesale Corp.*, 2019 WL 120765, at *10 (S.D.N.Y. Jan. 7, 2019).

Heskins graduated from law school in 1999 and has more than twenty years of experience in complex commercial litigation. Dkt. No. 113 at 4. He was an associate with Milbank, Tweed, Hadley & McCoy, LLP and O'Melveny & Myers, LLP from 1991 to 2005, ultimately rising to the level of counsel at O'Melveny & Myers, LLP, before joining White and Williams LLP in 2005. *Id.* In 2008, he became an equity partner at White and Williams LLP. *Id.* He has extensive experience in litigation involving the MCA industry, representing more than one hundred small businesses that allegedly have been victimized by the MCA industry, and has been cited as an authority on that industry in numerous national publications. *Id.* at 6. He has also testified on behalf of public interest groups before state and federal legislative bodies, including the United States Congress, and has advised numerous state, federal and local law enforcement agencies on predatory MCA practices. *Id.* He claims that he has commanded a standard blended hourly rate of at least $625 for all billers in actions pending in the Southern

District of New York and has had a blended hourly rate of $575 per hour approved by bankruptcy courts in California and Texas.[2]  *Id.*

Stuart Wells is a 1995 law school graduate, with over fifteen years of experience representing lenders and borrowers in financial litigation.  *Id.* at 8.  He has worked at a number of different law firms in the greater New York City area and is now counsel at White and Williams LLP.  *Id.*

Plaintiff argues that the time and labor expended by counsel in this matter, the novelty of applying RICO to the MCA industry, the skill necessary to successfully litigate a RICO action from initiation to judgment on the merits, the fact that counsel took the case on a contingency, and the significant litigation expenses incurred support the application for fees of $750 and $575 for Heskins and Wells, respectively.  *See* Dkt. No. 110 at 8–11.

Taking into account the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, the *Johnson* factors, and the increase in attorney's fees from 2019 to the date that the services were performed and the date when fees will be awarded, the Court concludes that an hourly rate of $625 per hour is appropriate for Heskins and a rate of $500 per hour is appropriate for Wells.  Counsel achieved excellent results. Counsel also took the case on a contingency where recovery was by no means assured and the legal issues regarding usury and RICO had some complexity.  "Plaintiffs' counsel provided high-quality legal assistance on difficult and evolving legal issues, . . . against a vexatious individual defendant."  *Elsevier Inc. v. Grossmann*, 2019 WL 3852484, at *7 (S.D.N.Y. Aug. 16, 2019). On the other hand, the case was not particularly undesirable, and it did not involve either the risk

---

[2] A blended hourly rate is intended to estimate the average hourly rate for all billers working on a case commensurate with the experience level of each attorney.  Dkt. No. 113 at 7.

or the complexity of other cases, that proceed to trial after taking fact depositions.  The witnesses generally invoked their Fifth Amendment privilege, Defendants did not mount a defense on the facts, and there was no particular time pressure or time limitations imposed by the client. Heskins has gained recognition as a litigator against the MCA industry, but this recognition is no doubt in part a result of the fact that he frequently litigates these cases.[3]  Heskins presumably was able to leverage in this case the knowledge he acquired in litigating related cases.  In any event, the additional legal research required by the complexity of the issues here is reflected in the reasonable hours that are billed; were the issues less complex, the Court would have given counsel credit for fewer hours.  Balancing the factors, a rate at the higher end of the cases cited by Plaintiff, but not the rates requested, is reasonable.

The Court rejects the argument that because Heskins has commanded a rate on a blended basis of $625 per hour in other cases, the Court should approve rates for Heskins and Wells that would result in a blended rate of $625 per hour in this case.  "[T]he attorney's customary hourly rate" is only one of the *Johnson* factors.  *Lilly*, 934 F.3d at 228 (quoting *Arbor Hill*, 522 F.3d at 186 n.3).  That other clients may have been willing to pay Heskins at a higher blended rate does not mean that the Court should approve this blended rate.  "On a fee-shifting application, . . . the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerances for spending."  *Beastie Boys v. Monster Energy Co.*, 112 F. Sup. 3d 31, 52 (S.D.N.Y. 2015).  "[A] reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Arbor Hill*, 522 F.3d at 190.  Tellingly, although Heskins asserts that he has commanded the blended rate of $625 per hour for actions in the Southern District of

---

[3] Plaintiff states, "Over the past six years, White and Williams LLP has represented more than one hundred small businesses that have been victimized by the MCA industry."  Dkt. No. 110 at 6.

New York, he does not allege that he regularly commands such a rate, much less that this representation forced him to forego representations of other clients where he would have commanded such a rate.

## III.   Reasonable Hours

Plaintiff seeks a fee award based on 801.7 hours billed by the New York attorneys on this action.  Dkt. No. 110 at 12.  In addition, Plaintiff seeks a fee award based on 151.4 hours billed by the Texas attorneys in connection with the Texas state court action that was dismissed before this action was filed in federal court seeking damages under RICO.  *Id.*  The fee requests are supported by detailed time records itemizing the time spent by each attorney by timekeeper name with a narrative description of the work performed.  *See* Dkt. No. 111-11 (White & Williams LLP); Dkt. No. 112 (Jones, Davis & Jackson, PC).

"[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  If a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its calculation of the presumptively reasonable fee.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  However, "[t]here is no precise rule or formula for making these determinations."  *Id.* at 436.  Because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," *Carey*, 711 F.2d at 1146, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Carey*, 711 F.2d at 1146).  Thus, a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items."  *Lunday v. City of*

*Albany*, 42 F.3d 131, 134 (2d Cir. 1994). As the Supreme Court noted, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Giardina argues that the hours are excessive. He notes that four of Plaintiff's five causes of action were voluntarily dismissed and asks that "all hours related to dismissed claims against Mr. Giardina as well as his co-defendants, should be entirely stricken from the bill." Dkt. No. 117 at 10. He also argues generally that work was performed by lawyers that could have been performed by paralegals, *id.*, and suggests that the hours billed were disproportionate to the amount at stake in the litigation and the recovery obtained, *id.* at 9. Giardina argues that Plaintiff is not entitled to attorney's fees for the time billed by his Texas attorneys on a case that was improperly brought in Texas, contrary to the forum selection clause in the MCA. *Id.* at 10–11.

Giardina's argument that Plaintiff's hours should be reduced for the claims that were voluntarily dismissed is without merit. Where the plaintiff has prevailed on some but not all of his claims, the Court looks to whether the claims "involve a common core of facts" or are "based on related legal theories." *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 435). In that instance, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 435). By contrast, "the district court should exclude . . . hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). "No fees should be awarded for time spent pursuing a failed claim if it was

'unrelated' to the plaintiff's successful claims in the sense that it was 'based on different facts and legal theories.'" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434–35). "To account for limited success, courts may make a percentage reduction in the fees sought." *Salustio v. 106 Columbia Deli Corp.*, 2017 WL 5714089, at *2 (S.D.N.Y. Nov. 27, 2017). Where claims are related to one another, the appropriate inquiry is to "'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) (quoting *Hensley*, 461 U.S. at 435).

Plaintiff's fifth cause of action, upon which it prevailed, and the first four causes of action, which it voluntarily dismissed, all arose from a common core of facts and were based on the same set of legal issues. The first cause of action alleged that Richmond breached the MCA with Plaintiff by providing only half the agreed upon amount under the MCA but by debiting Plaintiff's account as if the full amount had been paid. Dkt. No. 28 ¶¶ 120–23. The second cause of action alleged that Richmond received money from Plaintiff that it had no right to receive by continuing to debit the Designated Account after it had taken sufficient funds to repay the amount extended under the MCA. *Id.* ¶¶ 126–28. The third cause of action alleged that the MCA was a usurious loan in violation of Texas law. *Id.* ¶¶ 130–49. And the fourth cause of action sought attorney's fees under the Texas usury statute. *Id.* ¶¶ 150–53. All of these causes of actions revolve around the same constellation of facts as the RICO claim—the terms of the MCA, Richmond's involvement with the MCA, and whether the MCA is properly characterized as a loan or a purchase of receivables.

The amended complaint itself pronounces in its first paragraph: "This is a RICO action to recover damages caused to a small Texas business by reason of the Defendants' collection of a

loan charging interest in excess of 400%—ten times (10x) the rate permitted under the usury statutes of Texas and New York." *Id.* ¶ 1.  The elements of each of the first four causes of action involve elements that had to be proved by Plaintiff to make out its RICO claim and that clearly are components of the RICO claim.  Indeed, in its opinion granting Plaintiff summary judgment, the Court identified a threshold and preliminary question: whether the MCA constituted a loan, Dkt. No. 87 at 17, which is precisely the issue raised by Plaintiff's third and fourth causes of action.  Once the Court resolved that question in favor of Plaintiff, the conclusion that Plaintiff had met the elements of a RICO claim quickly followed.  *See id.* at 45 (rejecting argument that Giardina could not be liable under RICO because the agreement did not constitute a loan).  The RICO claim (and the usury issue that was at the heart of it) drove the litigation and the discovery in connection with the litigation.  At summary judgment, Plaintiff asked the Court to rule for it on its first two causes of action under New York state law only if the Court concluded that the MCA was not a loan.  *Id.* at 50.  All of the discovery and all of the legal issues briefed that were relevant to the Texas usury claim were also equally relevant to and dispositive of the federal RICO claim.

Giardina's argument that the hours should be reduced in light of the amount at stake is also without merit.  Plaintiff established that it was damaged in the amount of $75,117, which—when trebled—entitled it to a judgment of $175,351.  *Id.* at 3-4; Dkt. No. 94-1 at 5, 8, 15.  The total amount of attorney's fees sought is far in excess of that sum.  The Second Circuit, however, has rejected the argument that an attorney's fee award must necessarily be in proportion to the damages sought in a lawsuit.  *See Grant*, 973 F.2d at 101–02; *see also Raja*, 43 F.4th at 87; *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 602 (2d Cir. 2020) (applying concept in FLSA context); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (error to reduce fee

application of $75,825 based on verdict of $2,500).  In fact, the Second Circuit has stated that "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery."  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis in original).  The attorney's fee provision of Section 1964(c) reflects an implicit judgment that "'the public as a whole has an interest in the vindication of the rights conferred by the statute[] . . . over and above the value of [the] remedy to a particular plaintiff.'" *City of Riverside v. Rivera*, 477 U.S. 561, 574 (986) (quoting *Hensley*, 461 U.S. at 444 n.4) (discussing 42 U.S.C. § 1988).  As with claims under the federal civil rights statutes, a party who succeeds in establishing the onerous requirements for RICO liability "often secures important social benefits that are not reflected in . . . relatively small damages awards" and contributes to deterrence of similar violations "in the future."  *City of Riverside*, 477 U.S. at 574–75.  Where recovery of damages is sought, the relevant question is "'the amount of damages awarded as compared to the amount sought.'"  *Farrar v. Hobby*, 506 U.S. at 114 (quoting *City of Riverside*, 477 U.S. at 585 (Powell, J., concurring in the judgment)).

The right to attorney's fees under RICO (as well as the availability of treble damages) is intended to incentivize counsel to act as a private attorney general on matters of public concern "for which public prosecutorial resources are deemed inadequate."  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987).  Plaintiff discharged those responsibilities here.  Following Plaintiff's filing of the complaint in this action, both the New York Attorney General and the Federal Trade Commission instituted enforcement actions against Defendants.  *See* Dkt. No. 79 ¶¶ 66–69.  The FTC action resulted in a stipulated order, dated June 2, 2022, for a permanent injunction, monetary judgment, and a civil penalty against Giardina and one other defendant.  *See* Dkt. No. 113-1.  The stipulated order found that that

Giardina participated in deceptive and unfair acts or practices and enjoined Giardina from, *inter alia*, providing or arranging for or assisting any consumer in receiving or applying for any product or service that would provide funds in exchange for future receivables, revenues, or proceeds and from participating in any debt collection activities.  Dkt No. 113-1 at 1, 6.  The stipulated order also imposed a monetary judgment and civil penalty of $2,713,705.  *Id.* at 8–9.  The New York Attorney General Verified Petition alleged that Giardina and others preyed upon their victims by offering them fraudulent, usurious loans camouflaged as merchant cash advances.  Dkt. No. 73-20 ¶ 1.  The Court's summary judgment opinion and order, which Plaintiff here briefed and secured, was cited favorably by the New York Attorney General to the New York State Supreme Court Justice hearing the Attorney General's enforcement action.  *See* Dkt. No. 113-2.  The fact that Plaintiff's attorney's fees far exceed the amount it recovered in damages does not disqualify Plaintiff from recovering those fees.

Moreover, in litigating this matter, counsel was "in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel."  *Kassim*, 415 F.3d at 252.  Defense counsel was "compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands."  *Id.*  The complaint in this action was filed in New York State Supreme Court, New York County, on March 18, 2020, Dkt. No. 1-1, and removed by Defendants Ram LLC and Tsvi Reich to this Court on July 3, 2020 on the basis of federal question and diversity jurisdiction, *see* Dkt. No. 1.  Defendants' efforts to delay the lawsuit and to avoid judgment commenced almost immediately thereafter.  Giardina and Richmond had not appeared in the state court action and, although they did not consent to removal, they also did not move for a remand.  Dkt. No. 14 at 1.  Giardina and Richmond failed to respond to the complaint by September 4, 2020, even though they were served on June 5, 2020

and June 4, 2020, respectively, forcing Plaintiff to move for entry of default, Dkt. No. 8, and the

Court to adjourn the initial pretrial conference, Dkt. No. 10.  Instead of appearing in federal

court, Giardina and Richmond filed a meritless application for a stay in the already-removed

state court action.  Dkt. No. 14 at 2.[4]  Ultimately, after briefing, the Court granted Giardina and

Richmond's motion to vacate the entry of default based on the Second Circuit's preference for

trial on the merits.  Dkt. No. 18 at 3 (citing *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981)).

Giardina and Richmond filed a motion to dismiss the complaint, Dkt. No. 19, and, in

response, Plaintiff filed an amended complaint, mooting that motion, Dkt No. 28.  Giardina then

filed a largely frivolous motion to dismiss the amended complaint, Dkt. No. 32,[5] and Richmond

filed an answer and a meritless counterclaim for indemnification, Dkt No. 31, forcing Plaintiff to

file a memorandum in opposition to the motion to dismiss, Dkt. No. 38, and a motion to dismiss

the counterclaim, Dkt. No. 39.  On May 18, 2021, the Court issued an opinion and order denying

Giardina's motion to dismiss the complaint and granting Plaintiff's motion to dismiss a

counterclaim against it by Richmond.[6]  *See* Dkt No. 56.  The Court noted that Giardina had

moved to dismiss claims that had not been asserted against him, *id.* at 3, had invoked rules (such

as Federal Rule of Civil Procedure 9(b)) that did not apply to Plaintiff's claims, *id.* at 4, and had

made a frivolous argument that he was released from the claims, *id.* at 6.

Concurrently, Plaintiff was forced to respond to and make motions for discovery that

should never have been litigated.  On the day Giardina filed his motion to dismiss, and before an

---

[4] The motion for a stay was denied on grounds of mootness, because the action had been removed to this Court.  Dkt. No. 16.

[5] Giardina moved to dismiss claims that had not been asserted against him and argued that a release signed by other defendants—but that by its terms did not release Giardina—required the case to be dismissed against him.  *See* Dkt. No. 56 at 3–7.

[6] The Court also granted a motion filed by Defendants Ram and Tsvi Reich to dismiss crossclaims filed by Richmond against them.  Dkt. No. 56 at 10–11.

initial pretrial conference had been held giving Defendants the right to serve discovery requests, he and Richmond also filed a largely meritless motion to compel Plaintiff to turn over its confidential settlement agreement with the other defendants.  Dkt. No. 20.  The Court largely denied the motion at a conference on November 30, 2020, ordering Plaintiff to turn over only the portions of the release indicating who was released and from what claims—which made clear that Giardina and Richmond were not included in this release.  *See* November 30, 2020 Minute Entry.  Plaintiff was also forced to file a motion to compel and for an extension of discovery deadlines when Richmond failed to produce documents or respond to notices of depositions in violation of the Federal Rules of Civil Procedure and Giardina improperly asserted a blanket act of production privilege to Plaintiff's requests and simultaneously refused to agree to a discovery extension.  Dkt. No. 46.  After depositions were finally scheduled, Giardina and Richmond responded with a meritless argument that the depositions of witnesses who had been noticed should be cancelled because they intended to invoke their Fifth Amendment privilege against self-incrimination and that they should instead be permitted to submit an affidavit.  Dkt. No. 49.  Giardina and Richmond further asserted the frivolous argument that Plaintiff's counsel had a conflict of interest.  *See id.*[7]  The Court denied the motion for a protective order to prevent Plaintiff from taking the depositions and ordered that the three witnesses whose depositions Plaintiff had noticed be taken on or before May 14, 2021; the Court also rejected the allegation of unethical conduct.  Dkt. No. 51.[8]  When, by May 3, 2020, Richmond had still failed to

---

[7] Richmond and Giardina also filed a Rule 68 offer of judgment with the Court, which Plaintiff had not accepted, forcing Plaintiff to move to strike.  Dkt. Nos. 48, 50 at 4.

[8] The Court later ordered that the deposition of witness Jose DaSilva take place on May 12, 2021, that the deposition of Michelle Gregg take place on May 13, 2021, and that the deposition of Giardina take place on May 17, 2021, and ordered Richmond to respond to Plaintiff's document requests by May 12, 2021.  Dkt. No. 53.

produce documents, despite its representation to the contrary, Plaintiff was forced to move for sanctions. Dkt. No. 50 at 4–6. Richmond then substituted one Rule 30(b)(6) witness for another but failed to produce the second (substituted) witness, forcing Plaintiff once again to seek court assistance. Dkt. No. 57. The Court ordered the Rule 30(b)(6) witness to be produced. Dkt. No. 58. Giardina and Richmond filed a meritless request for reconsideration of the Court's order, Dkt. No. 59, forcing Plaintiff once again to respond, Dkt. No. 60. In short, Plaintiff was forced by Defendants' frivolous actions to engage in far more motion practice than should have been required given the issues in this case and the amounts at stake.

The Court has independently reviewed the time records submitted by Plaintiff.[9] Those records are detailed and do not suffer from blockbilling. The 63.6 hours recorded by Heskin are not excessive given the tasks that he performed. The Court has also reviewed the 738.1 hours billed by Wells. Most of these hours are not excessive. However, there are certain tasks for which the hours appear to be excessive. Wells recorded approximately 126 hours preparing the motion for summary judgment and 70 hours for the reply brief. He also billed over 125 hours prior to the filing of the initial complaint, much of it devoted to legal and factual research and to the drafting of the complaint. Those hours are excessive, even considering the somewhat more complex nature of the issues in this case. In addition, there is force to Giardina's argument that Wells billed time for tasks that could have been performed by a paralegal, such as preparing subpoenas, coordinating with court reporters, and finalizing filings. There are also activities, including legal research and some of the briefing, that could have been performed by a lower-cost associate. *See Beastie Boys*, 112 F. Sup. 3d at 52 (reducing award by 30% due primarily to the "partner-heavy" nature of the time billed and limited associate involvement in the matter);

---

[9] Giardina has not identified any entries that he believes to be excessive.

*Melodrama Publ'g, LLC v. Santiago*, 2015 WL 2380521, at *6 (S.D.N.Y. May 19, 2015) (same). The Supreme Court has instructed that "trial courts need not, and indeed should not, become green-eyeshade accountants" and that the Court's task in reviewing billing records is "to do rough justice." *Fox*, 563 U.S. at 838. "[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch*, 148 F.3d at 173. Keeping those admonitions in mind, the Court will reduce Wells's hours by 15% to 627.3 hours.

Plaintiff also seeks attorney's fees for the services performed by Wendy D. Dawer ("Dawer") and Matthew K. Davis ("Davis") of Jones, Davis & Jackson, PC in connection with the original Texas state court action. *See* Dkt. No. 118 at 16–17. Defendants argue that Plaintiff is not entitled to recover its attorney's fees for the Texas action because "Texas counsel consciously disregarded the [New York] forum clause [of the MCA], rendering their subsequently filed complaint in Texas court as meritless and without the necessary jurisdictional elements." Dkt. No. 117 at 14. Plaintiff counters that, because the MCA was void *ab initio* under New York law, the forum selection clause was unenforceable. Dkt. No. 118 at 16–17. The Texas court's decision dismissing the case was thus incorrect, and Plaintiff is entitled to recovery of its attorney's fees from that action. *Id.* The Court is aware of, and Plaintiff has pointed the Court to, no cases that support Plaintiff's contention that its success in this RICO action should permit it to recover attorney's fees for work done in connection with a separate action that did not assert a RICO claim. Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of *the suit*, including a reasonable attorney's fee." 18 U.S.C. § 1964(c) (emphasis

added).  The language of the statute would suggest that courts are only permitted to award attorney's fees in the lawsuits before them, not in related lawsuits.  Costs incurred in the Texas state-court action were not the costs of "the suit."

The Supreme Court has considered a related question in the civil-rights context. Section 1988 of Title 42 provides, in somewhat similar language to that used in Section 1964(c), "In any action or proceeding to enforce a provision [of certain enumerated civil-rights statutes], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  The question has arisen whether the provision allows the court to award attorney's fees for time billed in related administrative proceedings. The Supreme Court has held that "[a] court hearing one of the civil rights claims covered by § 1988 may still award attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation."  *N. Carolina Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986).  A court, however, can only award attorney's fees for "any discrete portion of the work product . . . that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached."  *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985); *see also N. Carolina Dep't of Transp.*, 479 U.S. at 15 (holding that this standard can be applied to prior proceedings even if they are not "'proceeding[s] to enforce' one of the §1988 civil rights laws").

Here, Plaintiff has not identified any work done by Dawer and Davis that was both useful and necessary to the Court's disposition of this case.  *See Raja*, 43 F.4th at 92–93 (placing burden on moving party to "identify any discrete hours expended . . . that met this standard" (internal quotation marks and citation omitted)).  Instead, Plaintiff seeks reimbursement for all work done in the prior Texas state-court action.  *See* Dkt. No. 118 at 17.  A cursory review of

Dawer's and Davis's billing records demonstrates that much of this work was irrelevant to the issues before the Court; a large portion of the billing was for briefing and argument in the motion to dismiss. *See generally* Dkt. No. 112, Ex. A. The motion to dismiss was apparently focused on whether the New York forum selection clause in the MCA required dismissal, a legal question entirely irrelevant to the disposition of this case; in fact, Plaintiff asserts that a core legal question in this case—whether the loan was usurious—was not addressed by the Texas court. *See* Dkt. No. 118 at 17 ("[T]he Texas court denied the petition on the basis of the [MCA's] forum selection clause, . . . without examining whether the [MCA] was a loan and/or imposed a usurious interest rate."). None of the work was necessary or useful to the disposition of this case. Because Plaintiff has not demonstrated that any of the work performed by Jones, Davis & Jackson, PC, was useful and necessary to the favorable disposition of this case, Plaintiff is not entitled to attorney's fees for work performed in connection with the Texas state-court action. *See Webb*, 471 U.S. at 243 ("The question argued below was whether the time spent on the administrative work . . . should be included in its entirety or excluded in its entirety. On this record, the District Court correctly held that all of the administrative work was not compensable.").

## IV. Multiplier

Plaintiff next argues that the Court should award them a 1.25 multiplier on their lodestar. Plaintiff argues that such an enhancement is justified based on the specialized knowledge they brought to bear as a result of their representation, the fact that they handled the case on a full contingency, the results obtained, the benefit to the public, and the complexity of the claims. Dkt. No. 110 at 6–10; Dkt. No. 118 at 10–13.

Plaintiff's argument misunderstands the law of this Circuit. The Court is required "to calculate the 'presumptively reasonable fee' by determining the appropriate billable hours

expended and 'setting a reasonable hourly rate, taking account of all case-specific variables.'"
*Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 189–90).  The Court "may, in
extraordinary circumstances, adjust the presumptively reasonable fee when it 'does not
adequately take into account a factor that may properly be considered in determining a
reasonable fee.'"  *Id.* (quoting *Millea*, 658 F.3d at 167).  However, "[f]actors that have already
been subsumed in the lodestar calculation cannot be used to enhance or cut the lodestar amount."
*Id.* at 231; *see also Millea*, 658 F.3d at 167 ("A district court may adjust the lodestar when it
'does not adequately take into account a factor that may properly be considered in determining a
reasonable fee.'" (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010))); *Lu
Wan v. YWL USA Inc.*, 2021 WL 1905036, at *9 (S.D.N.Y. May 12, 2021) (refusing to depart
from lodestar calculation because relevant factors already considered); *Torcivia v. Suffolk Cnty.*,
437 F. Supp. 3d 239, 258 (E.D.N.Y. 2020) (same); *Barati v. Metro-N. R. Co.*, 939 F. Supp. 2d
153, 159 (D. Conn. 2013) (refusing to adjust lodestar based on novelty and complexity of legal
issues because those factors were "already subsumed in the lodestar calculation").

The Court has already taken into account the factors that counsel argues supports an
increase in the lodestar when calculating counsel's reasonable hourly rate and reasonable hours.
Plaintiff does not identify additional exceptional factors or extraordinary circumstances in this
case.  Accordingly, Plaintiff is not entitled to a multiplier on the lodestar amount.

## V.   Costs

Plaintiff seeks an award of costs in the amount of $10,647.21, comprised of $8,914.35
incurred by White and Williams LLP and $1,732.86 incurred by Jones, Davis & Jackson, PC.
The Court has reviewed the costs for White and Williams LLP.  They include invoices from
Veritext Legal Solutions for court reporting, Keating and Walker for service of the summons in

this case, and Bederson LLP for its expert report. Dkt. No. 113-12. Defendant has not interposed an objection to the award of costs.

"[T]he Second Circuit has consistently 'held that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Tarax v. Blossom W. Inc.*, 2022 WL 2132749, at *3 (S.D.N.Y. June 14, 2022) (quoting *TufAmerica Inc. v. Diamond*, 2016 WL 1029553, at *7 (S.D.N.Y. Mar. 9, 2016)). Such costs are awardable in cases under RICO. *See Elsevier Inc.*, 2019 WL 3852484, at *7. The award of costs for White and Williams LLP is approved. For the reasons stated above, *see supra* Part III, the award of costs to Jones, Davis & Jackson, PC is denied.

## CONCLUSION

Plaintiff's motion for attorney's fees is granted in part and denied in part. The Court will award Plaintiff $353,400 in attorney's fees ($625 x 63.6 + $500 x 627.3) plus $8,914.35 in costs for a total of $362,314.35.

The Clerk of Court is respectfully directed to close Dkt. No. 109.


SO ORDERED.


Dated: January 5, 2023
    New York, New York                           LEWIS J. LIMAN
                                        United States District Judge